ESTATE OF LEO J. DUTCHER, JOHN W. DUTCHER, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74685. Filed August 31, 1960.

*Robert W. Tripp, Esq.*, for the petitioner.
*Robert W. Siegel, Esq.*, for the respondent.

OPINION.

Mulroney, *Judge:* Respondent determined a deficiency in petitioner's estate tax of $18,562.99. The questions for decision are:

(1) Whether 3,928 shares of Selected American Shares, a mutual fund, were includible in decedent's gross estate;

(2) Whether miscellaneous administration expenses in the amount of $10,661.16, disallowed by respondent, are deductible as expenses of decedent's estate.

(3) Whether the estate is entitled to include $13,000 in the estate tax marital deduction for a cash payment made to decedent's widow under a settlement agreement; and

(4) Whether $6,000 of executors' commissions and attorneys' fees, disallowed by respondent, is deductible in decedent's estate.

All the facts have been stipulated. They are found accordingly.

Petitioner John W. Dutcher is the executor of the estate of his father, Leo J. Dutcher (hereafter sometimes called decedent), who died January 31, 1955. The estate tax return for decedent's estate was filed with the district director of internal revenue at Detroit, Michigan, on December 23, 1955.

Decedent lived in Michigan for a number of years and was engaged in the business of operating a funeral home. He and his first wife, Clara, executed a joint will on July 29, 1944. Clara died on April 18, 1949, survived by her husband, Leo, and their children, John W. Dutcher and Mary Jane Towns. We will sometimes refer to the children as John and Mary Jane. Clara's will was entered for probate in the Hillsdale County, Michigan Probate Court. The joint will, after reciting that it was to be irrevocable by the sole act of either party, provided, in part, as follows:

THIRD: In the event that I, the said Clara E. Dutcher, shall predecease the said Leo J. Dutcher, I give all of my property of every name and nature and wheresoever situate at the time of my death to the said Leo J. Dutcher, * * *

FOURTH: At the death of the survivor of the said Leo J. Dutcher and Clara E. Dutcher, it is mutually agreed and I, as possible survivor, do hereby direct that any and all property owned by me at the time of my death shall be equally divided between our son, John W. Dutcher and our daughter, Mary Jane Towns.

At the time of Clara's death there were 2,250 shares of Selected American Shares, a mutual fund, registered in the name of decedent and Clara as joint tenants with right of survivorship and not as tenants in common. In July 1949 the old share certificates were

canceled and a new certificate representing the 2,250 shares was issued in decedent's name alone. In December 1949 decedent purchased an additional 450 shares in his name alone. In February 1950 the certificates for 2,700 shares were canceled and two new certificates, each representing 1,350 shares, were issued. One was issued in the names of decedent and John and the other in the names of decedent and Mary Jane, each as a joint tenant with the right of survivorship and not as tenants in common. By about January 19, 1955, decedent, either by purchase or by stock dividend, had received a total of 3,928 shares, half of which were registered with his son as a joint tenant and half of which were similarly registered with his daughter as joint tenant. There is no indication in the record that any part of the consideration paid for the shares came from either decedent's son or daughter.

In October of 1950 the decedent married Florence Sunderlin (hereafter sometimes called Florence) and took up residence in Florida. Prior to this marriage he entered into an antenuptial agreement with his prospective wife which was recorded in Michigan. The agreement gave her an interest as tenant by the entirety in certain property then owned by the decedent and also provided for her to relinquish all rights she might otherwise have as decedent's wife in certain other specified real and personal property. Later decedent created an interest in his second wife as a tenant by the entirety in certain land, land contracts, mortgages, notes, and shares of stock in which an interest had been specifically denied her under the agreement.

In December 1953 decedent sold the funeral home, its furnishings, and other assets to his son who thereafter operated it.

In December 1954 decedent executed a writing purporting to be a new will which, on its face, renounced the antenuptial agreement and gave one-half of the gross value of his estate to Florence and one-quarter each to John and Mary Jane. The manner for computing the gross value of his estate was described in the will as follows:

In computing the gross value of my estate, it is my will that the shares in the Selected American Shares, now registered in the joint names of Leo J. Dutcher, John W. Dutcher and Mary Jane Dutcher Towne, [Towns] shall be included in computing such gross value; it being my intention that the value of the shares taken by Mary Jane Dutcher Town [Towns] and John W. Dutcher by operation of law at my death shall be included in computing the gross value of my estate in arriving at the value of the one-half of my gross estate hereinabove devised and bequeathed to my said wife, and that such shares so taken by Mary Jane Dutcher Towne [Towns] and John W. Dutcher shall be considered as an advancement to them and given to them by me during my lifetime.

On January 19, 1955, a complaint was filed by decedent and his wife as plaintiffs in the Circuit Court for the Sixth Judicial Circuit

of the State of Florida in and for Pinellas County, to partition the shares of Selected American Shares. Decedent's son and daughter, Selected American Shares, Inc., and a transfer agent were named as defendants in the suit. John and Mary Jane filed an answer in the Florida court on February 8, 1955, 8 days after decedent's death, claiming that title to all the shares had vested in them at decedent's death and they counterclaimed against Florence alleging that she was in possession of certain other assets of decedent's estate.

Meanwhile, on February 2, 1955, a petition for probate of decedent's joint will was filed with the Probate Court of Hillsdale County, Michigan. By an order of the Michigan Probate Court dated February 14, 1955, decedent's son, named as executor in the joint will, was granted special administration of decedent's estate. Florence filed objections to the probate of the joint will and decedent's son and daughter filed an answer to the objections. Subsequently, the Probate Court, after consideration of the matter, entered an order directing that the joint will be entered to probate. Decedent's second wife filed a notice of appeal from the Probate Court's order to the Circuit Court for Hillsdale County, Michigan.

At about the same time, on February 4, 1955, a bill of complaint was filed in the Circuit Court for Hillsdale County, Michigan, by decedent's son and daughter and decedent's son as special administrator of decedent's estate against Florence to recover property allegedly transferred to her contrary to the antenuptial agreement. The defendant, by her attorney, appeared specially and moved to dismiss.

On February 17, 1955, Florence petitioned the Florida court to file decedent's December 1954 will.

On May 26, 1955, Florence and John and Mary Jane as parties to the Florida suit entered into a settlement agreement for the several litigations described above. The settlement agreement was joined in by various counsel and by John as special administrator of his father's estate in Michigan. This agreement was filed in the Florida action and subsequently a decree based thereon was rendered by the Florida court. Under this agreement the second wife was to receive certain of decedent's assets located in Florida, certain shares of corporate common stock and the income for life or until remarriage from a trust, the rest of which was to be the shares of Selected American Shares then in her possession. The agreement further provided the sum of $13,000 cash would be paid to Florence.

This agreement also provided that each of the parties to the agreement pay all legal expenses, attorneys' fees, and other expenses incurred by each of them in the several litigations.

The parties filed stipulations with the Michigan courts which resulted in an order of dismissal of the civil action, a dismissal of

the appeal concerning the objection to the admission of the joint will, and further proceedings of administration in the Michigan Probate Court under the joint will.

Petitioner, on the estate tax return for decedent's estate, filed December 23, 1955—

a. Included the value of 1,964 of the 3,928 shares of Selected American Shares issued to decedent and his children. The said shares were valued at $16.78 per share or $32,955.92 for the total inclusion in decedent's gross estate;

b. Claimed as deductions "Miscellaneous expenses incurred in estate litigation as shown on Schedule 'J' * * *" as follows:

| | |
|---|---:|
| Casler and Douglas, Clearwater, Florida | |
|     Florida counsel for heirs in litigation there | $4,531.28 |
| Fowler, White, Gillen, Yancey and Hunkey, Tampa, Florida | |
|     Florida counsel for Selected American Shares in Florida litigation | 772.38 |
| Johnson, Thompson, Raymond and Mayer, Chicago, Illinois | |
|     Chicago counsel for Selected American Shares | 300.00 |
| Dahlstream, Hardin, Schiff & Waite, Chicago, Illinois | |
|     Chicago Counsel for City National Bank, transfer agent for Selected American Shares | 360.56 |
| Kenneth G. Prettie, Hillsdale, Michigan | |
|     Michigan counsel for heirs in probate proceedings, taking depositions and completing settlement of estate litigation (This is amount paid to date) | 2,000.00 |
| Kenneth W. Huggett, Hillsdale, Michigan, consultations | 60.00 |
| H. C. Lawrence, Chicago, Illinois | |
|     Taking depositions | 154.28 |
| Mr. and Mrs. J. Blount, Los Angeles, Cal. | |
|     Travel Expenses for witnesses | 354.30 |
| James Alcorn, Hillsdale, Michigan | |
|     extra labor | 318.07 |
| City National Bank, Chicago, Illinois | |
|     Charges | 11.55 |
| Kenneth G. Prettie, Hillsdale, Michigan | |
|     travel & Misc. Exp. | 308.19 |
| Mary Jane Towns & John W. Dutcher, travel expense and misc. expense as witnesses on Florida trips | 1,454.55 |
| W. O. Keas, Hillsdale, Michigan, abstracting | 36.00 |
|     Total | 10,661.16 |

c. Treated the $13,000 payment to the second wife under the settlement agreement as eligible for the marital deduction; and

d. Claimed $3,000 as executors' commissions and $5,000 as attorneys' fees as deductions.

It was stipulated at the trial that the $3,000 claimed as executors' commissions had not been paid and of the $5,000 claimed as attorneys' fees, $2,000 had been paid by the estate. All the miscellaneous expenses, amounting to $10,661.16, were paid out of the assets of the

estate and approved by an order of the Probate Court for Hillsdale County, Michigan.

Respondent, in determining petitioner's deficiency—

a. Included the value of 3,928 shares of Selected American Shares in gross estate at a total value of $68,582.88;

b. Disallowed $10,661.16 as a deduction for miscellaneous administration expense;

c. Disallowed the $13,000 payment to the second wife as a part of the marital deduction; and

d. Disallowed deductions of $3,000 for executors' commissions and $3,000 for attorneys' fees.

Petitioner makes some sort of an argument that only half of the 3,928 shares of Selected American Shares should be included in decedent's estate. As near as we can follow petitioner's argument, it is based upon the contention that the ultimate beneficiaries of a joint will, who are to take upon the death of the survivor, have some sort of vested interest in the property that passes to the survivor on the first death. There is no merit in the argument. Similarly, there is no merit in petitioner's brief mention that section 2040, I.R.C. 1954,[1] sanctions exclusion of the value of one-half of said shares. The cited section permits exclusion of the value of jointly held property to the extent the surviving joint tenant has given consideration for his interest. While the shares held were held in joint tenancy there is no evidence the children of decedent paid anything for their interests. Respondent's determination that the value of 3,928 shares of Selected American Shares should be included in the estate was correct. We also uphold respondent's valuation of these shares at $68,582.88—a slightly higher per share value than reported by petitioner. Respondent's valuation is presumptively correct and petitioner introduced no evidence as to the value of the shares and does not argue the valuation issue.

The claimed miscellaneous expenses previously listed in the total amount of $10,661.16 were properly disallowed by respondent. We agree with the following statements contained in section 20.2053–3(a) and section 20.2053–3(c)(3), Estate Tax Regs.:

Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees or devisees, may not be taken as deductions. * * *

Attorney's fees incurred by beneficiaries incident to litigation as to their respective interests do not constitute a proper deduction, inasmuch as expenses of this character are incurred on behalf of the beneficiaries personally and are not administration expenses.

This case was fully stipulated and insofar as we can determine from the stipulated documents, all of these expenses in the sum of

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.

$10,661.16 were incurred in the Florida litigation. This litigation was commenced by the decedent and his wife by their complaint filed January 19, 1955, in the Circuit Court for the Sixth Judicial Circuit of Florida. The named defendants were John W. Dutcher, Mary Jane Kempton (formerly Mary Jane Towns), Selected American Shares, Inc., and the City National Bank & Trust Company of Chicago. The petition alleged Leo J. Dutcher had 1,850 shares of Selected American Shares, Inc., which had been registered on the books of the corporation in the names of Leo J. Dutcher and John as joint tenants with the right of survivorship and another block of 1,850 such shares which had been registered on the books of the corporation in the names of Leo J. Dutcher and Mary Jane as joint tenants with the right of survivorship. The petition alleged Leo had assigned his "undivided one-half interest" in the shares to his wife but the defendant, Selected American Shares, Inc., and the defendant bank as its alleged agent refused to recognize the assignment unless the defendants John and Mary Jane would join in the transfer, which they had refused to do. The prayer of the petition was for a partition of the shares and a determination that the plaintiff Leo was the owner of one-half of said shares.

Shortly after the suit was filed Leo Dutcher died and on February 2, 1955, John W. Dutcher was appointed special administrator of his estate by the Probate Court for the County of Hillsdale, Michigan.

On February 8, 1955, John and Mary Jane filed their answer in the Florida suit. They first alleged that Leo J. Dutcher being dead, they were entitled to the stock as survivors and then counterclaimed against the plaintiff Florence, stating she was in possession of other assets of Leo J. Dutcher, which, by operation of law, became their property.

After many amendments and voluminous pleadings by all parties a settlement agreement was filed. This agreement in its opening paragraph lists Florence, John, and Mary Jane as parties and then states the agreement is "joined in" by the counsel for the parties naming the various attorneys "and JOHN W. DUTCHER as Special Administrator and Executor in Michigan of the Estate of Leo J. Dutcher, deceased." The agreement is signed by Florence, John, and Mary Jane and by the attorneys and John W. Dutcher as Special Administrator and Executor of the Estate of Leo J. Dutcher, deceased. Amongst the signers is Kenneth G. Prettie, who signed as "Attorney for John W. Dutcher, Executor, and of Counsel for John W. Dutcher and Mary Jane Towne."

From the above it does not appear that the Florida litigation was incidental to the administration of the estate. The litigation was started by decedent in his lifetime and after he died neither the

special administrator not the executor of his estate were made parties. The suit was against John and Mary Jane and they answered and counterclaimed and thereafter pleaded as individuals. The record shows John had been appointed special administrator of his father's estate several days before he filed his original answer in the Florida suit. However, John, in his representative capacity, never did appear by himself or his attorney in the Florida litigation.

It is true John, in his representative capacity, "joined" in the settlement agreement of this suit but such joinder hardly renders the Florida litigation an estate action to capture assets for the estate. It probably is true that the settlement agreement, which settled more than the Florida lawsuit, was beneficial to the estate but that does not make the litigation to which it was appended litigation that was commenced and carried on for the benefit of the estate. The Florida litigation never did get out of the pleading stage before it was settled but it fairly appears from the pleadings that the suit was incident to rival claims by individual parties as to interests in property without mention of possible claims of the estate.

Upon the record presented we hold the expenditures for the Florida litigation were not deductible.

Petitioner claimed the $13,000 paid decedent's widow as a part of the marital deduction. Section 2056 provides for a deduction from the value of the gross estate of an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse. The petitioner contends that the following portion of section 20.2056(e)–2(d)(2), Estate Tax Regs., is applicable to the facts surrounding the $13,000 payment to the widow:

> If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.

The agreement filed in the Florida case provides, in part:

> It is mutually agreed that Florence Dutcher shall receive as dower from the Estate of Leo J. Dutcher, deceased, or retain as surviving joint owner, the following property:
> 1. All Florida assets as above listed and defined.
> 2. The sum of Thirteen Thousand Dollars ($13,000.00) in cash.

3. 100 shares of Fruehoff Trailer common stock.
4. 200 shares of Testron American, Inc., common stock.
5. The income for life * * * of a trust * * *

The Florida assets referred to in No. 1 above were listed in the agreement as a residence, household furniture and equipment, an automobile, and a Florida bank account. No. 5 is unimportant here as no claim for marital deduction was made with respect to trust income.

Petitioner claimed marital deduction with respect to the first four items in the total sum of $40,441.76. Respondent disallowed only the $13,000 item. While the Florida litigation cannot be said to involve Florence's rights to a portion of decedent's estate by reason of her status as a widow or legatee or devisee of decedent's will, the settlement agreement was designed to settle more than the Florida suit in which it was filed. It specifically settled her petition to file the second will in Florida and her challenge, then pending on appeal, to the Michigan probate of the joint will. The $13,000 payment should be allowed as a marital deduction. We do not see why this one item of $13,000 should be selected for disallowance. Respondent makes a short argument to the effect that the settlement agreement "is not a bona fide recognition of enforcible rights of the widow against the estate" and makes no attempt to answer petitioner's argument based on *Estate of Gertrude P. Barrett*, 22 T.C. 606. In the cited case we held the settlement payment made by the executor to the surviving husband to compromise his claim to a share in the estate and permit decedent's will to be probated without contest, was allowable as a marital deduction. In the *Barrett* case no formal legal proceedings were commenced upon the husband's claim. Here there was an actual will contest that was settled by paying a portion of the estate assets to the surviving spouse. The issue is ruled by the *Barrett* case. We hold for petitioner.

Petitioner claimed deductions on the estate tax return for estimated amounts of executors' commissions and attorneys' fees of $3,000 and $5,000 respectively as deductible administration expenses under section 2053(a)(2). This provision of the law contemplates that these items have been paid or may reasonably be expected to be paid. Respondent disallowed the claimed $3,000 executors' commissions and $3,000 of the $5,000 claimed deduction for attorneys' fees. Decedent died in January 1955. The estate tax return claiming the estimated amounts as deductions was filed in December 1955.

At the time of trial of this case in November 1959, counsel for the parties stated they were in agreement as to all the facts but the written stipulation had not been completed. They said the stipulation would be filed in a few days. In the oral presentation of the issues it developed there was not then complete agreement as to

whether the administrators' fees and attorneys' fees had all been paid. Counsel said this would be covered in the written stipulation. The stipulation filed a few days later states that the $3,000 claimed as executors' commissions and $3,000 of the $5,000 claimed as attorneys' fees had not been paid. In view of the length of time which has passed, the complete lack of any showing by petitioner that there is a reasonable expectation of payment of these amounts, or, indeed, in the absence of any indication that enough of the estate remains intact to pay these charges, we cannot find that there is a reasonable expectation that the estimated amounts will ever be paid. Cf. sec. 20.2053–3(b)(1)(i), Estate Tax Regs. Respondent was correct in disallowing $6,000 of the claimed deduction for executors' commissions and attorneys' fees.

*Decision will be entered under Rule 50.*