ESTATE OF GEORGE M. BRANDON, DECEASED, WILLARD C. BRANDON, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17539-83.          Filed March 10, 1986.

*Richard A. Williams*, for the petitioner.
*James W. Lessis*, for the respondent.

DRENNEN, *Judge*: Respondent determined a deficiency in Federal estate tax against the Estate of George M.

---

[13]Our disposition of this issue also disposes of the issue with respect to the spread forward under sec. 810(d).

Brandon, deceased, in the amount of $33,560, and an addition to tax of $8,390.

After concessions, the principal issue remaining for our decision is whether an amount paid to a decedent's surviving spouse pursuant to a settlement of her claim to a share of her late husband's estate is deductible from the decedent's gross estate as a marital deduction pursuant to section 2056.[1] In addition, we must determine whether the failure to timely file decedent's estate tax return was due to reasonable cause.

## FINDINGS OF FACT

Some of the facts have been stipulated and they are so found. The stipulation of facts and joint exhibits are incorporated herein by this reference. The pertinent facts are summarized below.

George M. Brandon (decedent), was born on August 23, 1898. He died testate on January 14, 1979. At the time of his death, decedent was a legal resident of West Helena, Arkansas. Decedent was survived by one son, Willard C. Brandon, and two grandsons, Jeffrey K. Brandon and Stephen A. Brandon. Willard C. Brandon (petitioner), is the executor of decedent's estate.[2] At the time he filed the petition in this case, petitioner resided in West Helena, Arkansas.

An untimely Federal estate tax return (Form 706) was filed for the decedent's estate on April 18, 1980, with the Internal Revenue Service Center in Austin, Texas.

Nina Mae Brandon (Nina Mae), decedent's first wife, was born on December 29, 1899. Decedent and Nina Mae were married on December 22, 1922, and lived as husband and wife until Nina Mae's death on November 6, 1976. Nina Mae died testate. Decedent was named administrator of Nina Mae's estate. A timely Federal estate tax return (Form 706) was filed for her estate. After decedent's death, petitioner was appointed successor administrator of Nina Mae's estate.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years at issue.

[2] Petitioner is a farmer. He is also a high school graduate and has 3 years of college credits.

The last will and testament of decedent and of Nina Mae were prepared by Gaston Williams (Williams), an attorney who specialized in estate planning. Each will was dated July 22, 1959, and contained a marital deduction provision for the surviving spouse and a residue trust provision. Nina Mae executed a First Codicil to her will on January 9, 1976, amending the trust and executor provisions. Decedent executed a codicil to his will dated August 10, 1976. In his codicil, decedent made a cash bequest of $25,000 to Chanoy Lee Shockley (Chanoy). The codicil provided that the bequest was made "in recognition of the loyalty and devotion" that Chanoy had displayed to decedent and his family. The codicil also provided that Chanoy would be allowed to live in her present residence for a reasonable time after decedent's death, until she could find a suitable place to live. Chanoy lived in a house that she rented from decedent and Nina Mae. She had been employed as a clerk in the farm commissary where decedent worked as manager.

On February 10, 1978, decedent married Chanoy. They lived together as husband and wife until his death. Petitioner was not happy that his father chose to remarry, but he and Chanoy got along very well until his father died and she sued the estate. After Chanoy filed suit, petitioner's relationship with Chanoy became very hostile and the litigation very heated.

Prior to his marriage to Chanoy, decedent sought to dispose of his real estate holdings. He contacted his attorney Charles B. Roscopf (Roscopf). Roscopf was a general practitioner who did a considerable amount of probate work. He had represented decedent and Nina Mae on several occasions since 1968. Roscopf was also the attorney for Nina Mae's estate. Nina Mae had conveyed some of the real estate held by her to her two grandchildren prior to her death. The remainder of her estate was either held jointly with decedent or passed to him under the marital deduction provision or the residue trust provision of her will.

Decedent disposed of his properties by either gift or sale to his son, petitioner, and to his grandchildren. When Roscopf prepared the deeds for these properties he advised decedent that the property transfers could be attacked on

the basis of fraud in view of the fact that he was contemplating marrying Chanoy. In addition, decedent was a member of the board of directors of the Helena "Rice Dryer" board which was in the midst of a $1.3-million lawsuit. Roscopf advised decedent that if a judgment was reached against the Board of Directors this could also cause the property transfers to be set aside. Despite Roscopf's protests decedent instructed him to proceed with the transfers.

Shortly after decedent's death a meeting was held at petitioner's house. This meeting was attended by petitioner, his wife and two sons, Roscopf, and an accountant named "Don Thomas" (Thomas). Thomas had previously been a member of the accounting firm of Laney, Thomas & Pruse which had filed decedent's income tax returns and prepared Nina Mae's estate tax return. The firm had since disbanded. Roscopf assumed that Thomas was present since he, Thomas, would be filing decedent's estate tax return. Roscopf assisted in the probate of the will and the codicil. A petition to probate the will and to appoint petitioner as executor was filed on March 16, 1979. That same day an order was entered admitting the will to probate and appointing petitioner as executor. Roscopf also, as required by Arkansas law, gave notice to Chanoy, as the surviving widow, of her right to elect to take against decedent's will. In addition, Roscopf prepared and filed an inventory of decedent's estate on June 29, 1979, listing the value of decedent's total estate of personal property as $167,172.18.

On June 21, 1979, Jeffrey K. Brandon (Jeffrey), decedent's grandson, filed a complaint for unlawful detainer against Chanoy in the Circuit Court of Phillips County, Arkansas. Jeffrey sought to have Chanoy evicted from the Brandon family home where she had resided with decedent. This property had been conveyed to Jeffrey by Nina Mae on April 22, 1976.

Chanoy engaged the services of the firm of Baker and Pittman in West Helena, Arkansas. On July 23, 1979, she filed a motion to dismiss the complaint filed by Jeffrey whereby she alleged that the transfer of the property from Nina Mae to Jeffrey was invalid because Nina Mae was incompetent at the time she signed the warranty deed. In

addition, she alleged that the deed was not supported by consideration, that she had a right as decedent's widow to occupy the residence, and that no landlord-tenant relationship existed between her and Jeffrey.

On October 19, 1979, Chanoy filed a complaint in equity in the Chancery Court of Phillips County, Arkansas. She alleged that Nina Mae's transfers of property shortly before her death were invalid because Nina Mae was incompetent and lacking in capacity. Moreover she alleged that decedent's transfers of property shortly prior to their marriage were a breach of fiduciary duties and a fraudulent abuse of a confidential relationship.

On October 22, 1979, Chanoy filed an election to take against decedent's will pursuant to Arkansas Statutes Annotated section 60-501 (1971) (the statute). With her election, Chanoy renounced all benefits under decedent's will and under the first codicil to the will. The executor's response to Chanoy's election was that the statute was violative of the equal protection clause of the U.S. Constitution, and of article 2, section 3 of the Arkansas Constitution and, therefore, that Chanoy's action should be dismissed.

Chanoy later amended her complaint in equity to allege that Nina Mae's signatures on the deeds transferring property to her grandsons were forgeries and thus should be set aside as fraudulent. In addition, she requested that certain property be set aside as a homestead and that she receive a dower share in decedent's properties. On December 20, 1979, Chanoy filed an affidavit attesting that she had filed with the Chancery Court all papers, records, and documents in her possession that had belonged to decedent.

Roscopf sought an opinion from the Research Group, Inc. (the Research Group), of Charlottesville, Virginia, to assist in determining the estate's legal position. The Research Group prepared a memorandum of law dated February 4, 1980, which indicated that the estate might not have standing to raise the issue of the constitutionality of the statute. The memorandum also cited several cases where State courts upheld similar statutes because they discerned a legitimate State purpose in providing dower to women but not to men due to the disparity in economic capabilities between the two. The memorandum therefore concluded

that it was possible that the statute would be held constitutional.

On June 3, 1980, the parties entered into a settlement agreement whereby Chanoy accepted the sum of $90,000 in cash in return for a full and complete release of any and all claims she held against decedent's estate and the other parties involved. That same day, an order was issued by the Chancery Court approving the settlement.

In *Orr v. Orr*, 440 U.S. 268 (1979), the Supreme Court held that gender-based laws that do not serve a legitimate governmental purpose are unconstitutional. On February 23, 1981, the Arkansas Supreme Court in *Stokes v. Stokes*, 271 Ark. 300, 613 S.W.2d 372 (Ark. 1981), held that Arkansas Statutes Annotated sec. 60-501 was unconstitutional.

## *Addition to Tax*

Decedent died on January 14, 1979. His estate tax return, due 9 months after the date of his death, was not filed until April 18, 1980.

Petitioner testified that he left the matter of the settlement of his father's estate to Roscopf. After he was contacted by Roscopf in February 1980 and learned that a return had not been filed, petitioner contacted Wayne Crews (Crews) and asked him to prepare a return. Petitioner then had to seek the approval of the probate court to obtain a loan to pay the tax due, which caused a further delay. Chanoy was also uncooperative in providing the records needed to file the return. However, petitioner was aware of the existence of the Federal estate tax law and the fact that a return might be due from his father's estate. Petitioner had served as the successor administrator to Nina Mae's estate after his father died, but by that time, Nina Mae's estate tax return had already been filed.

Roscopf was unaware that a return had not been filed until he spoke with petitioner in February 1980. Within a week of this meeting, Crews had prepared the return but Roscopf did not file it until 2 months later. The inventory of assets listed on the return was the same inventory listed by Roscopf in documents filed in court on June 29, 1979. Roscopf had assumed that the accounting firm of Laney, Thomas & Pruse would file the return since they had

handled all of decedent's accounting matters and filed his other tax returns. He was unaware that the firm had disbanded.

Respondent determined an addition to tax of $8,390 for the untimely filing of the return.

## OPINION

The principal issue is whether the amount of $90,000 paid by the estate to Chanoy, decedent's surviving spouse, in settlement of her claim to a share of decedent's estate is deductible from decedent's gross estate pursuant to section 2056.

Respondent contends that the $90,000 is not deductible because it does not meet the requirements of section 2056. Respondent argues that since Arkansas Statutes Annotated section 60-501 (the statute), was declared unconstitutional, Chanoy, the surviving widow, could not have enforced her claim against decedent's estate. Since the claim would not have been enforceable, respondent argues, the settlement agreement based upon Chanoy's rights under the statute is not a bona fide recognition of Chanoy's rights. Without a bona fide recognition of Chanoy's rights, respondent continues, the "passing" requirement of section 2056 is not met. In addition, respondent argues that the lump-sum settlement amount exceeds the value of the widow's enforceable dower rights in decedent's estate since decedent was not seized of any real estate during his marriage to Chanoy. For these reasons, respondent argues that his determination should be sustained.

To the contrary, petitioner contends that the $90,000 is deductible because the settlement was an agreement reached in good faith as the result of arm's-length negotiations. Moreover, petitioner contends the settlement was reached only after extensive and heated litigation representative of a transaction between truly adverse parties. The fact that the statute was declared unconstitutional subsequent to the settlement, petitioner contends, does not prevent the settlement from being a bona fide recognition of Chanoy's rights pursuant to section 2056. Petitioner contends that the enforceability of the surviving widow's dower right is to be examined at the time the settlement agree-

ment is entered into. The settlement, petitioner urges, is then viewed the same as an interest in property that passes to a surviving spouse by inheritance. To hold otherwise, petitioner concludes, would allow respondent to "second guess" how a court would hold if a settlement is not reached. For the reasons set forth below, we agree with petitioner.

The marital deduction, now codified at section 2056, was enacted as part of the Revenue Act of 1948. The purpose of this provision was to equalize the estate tax on estates of decedents who were residents of non-community property States and estates of decedents who were residents of community property States. S. Rept. 1013, 80th Cong., 2d Sess. (1948), 1948-1 C.B. 285, 288.

Section 2056(a) provides in part as follows:

the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate on amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse * * *

The passing requirement at issue herein is discussed as follows:

SEC. 2056(c). DEFINITION.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

  *  *  *  *  *  *  *

(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

Section 20.2056(e)-2(d), Estate Tax Regs., in defining an interest which "passes from the decedent to his surviving spouse," provides:

(d) *Will contests.* (1) If as a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having "passed from the decedent to his surviving spouse."

(2) If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition

of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.

In determining whether a settlement agreement is a "bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate," courts examine whether or not the agreement was made in good faith as the result of arm's-length negotiations. *Estate of Barrett v. Commissioner*, 22 T.C. 606 (1954).[3] The rights of a surviving spouse are presumed to be bona fide if they are so found by a local court, and a decree is then issued pursuant to a genuine adversary proceeding. *Estate of Barrett v. Commissioner*, *supra*. However, a settlement made pursuant to a local court decree entered by consent is not necessarily accepted as bona fide. Sec.20.2056(e)-2(d)(2), *supra*. Respondent urges us to find that Chanoy's rights were not bona fide because the statute granting those rights was declared unconstitutional subsequent to the settlement agreement. In addition, respondent points out that prior to the settlement, the Supreme Court ruled in *Orr v. Orr*, 440 U.S. 268 (1979), that gender-based statutes were unconstitutional. Therefore, respondent suggests petitioner should have realized that the statute would be declared unconstitutional.

On June 3, 1980, when the settlement was reached, the statute provided in pertinent part as follows:

When a married man dies testate as to all or any part of his estate, or when a married woman dies leaving as her Last Will and Testament one executed prior to her marriage, the surviving spouse shall have the right to take against the Will; and in the event of such election the rights of the surviving spouse in the estate of the deceased spouse shall be limited to the following:

(a) The surviving spouse if a woman, shall receive dower in the deceased husband's real estate and personal property as if he had died intestate, which dower shall be additional to her homestead rights and statutory allowances;

---

[3]See also *Estate of Dutcher v. Commissioner*, 34 T.C. 918, 926 (1960).

(b) The surviving spouse, if a man, shall receive a curtesy interest in the real and personal property of the deceased spouse to the same extent as if she had died intestate. * * *

Respondent contends that since the Supreme Court had ruled that gender-based statutes were unconstitutional, Chanoy's rights were to be tested at the time of the settlement as if they had been enforced at that time. Respondent suggests that since *Orr* had sounded the "death-knell" for gender-based statutes, that petitioner should have known that the statute would be held unconstitutional. Respondent points out that the statute was declared unconstitutional on February 23, 1981. Respondent appears to suggest that we require that taxpayers be able to foretell the future. Respondent would have us retroactively disturb a settlement agreement based upon a subsequent change in the law. This we cannot do. We, as the Court, and the respondent now have the benefit of hindsight. The statute has been declared unconstitutional. However at the time the settlement agreement was reached, Roscopf believed that the fate of the statute was uncertain. This belief is supported by the fact that the statute was declared unconstitutional only upon a rehearing of the case after a different result had been reached by the trial court and upheld by the Arkansas Supreme Court. See *Stokes v. Stokes*, 271 Ark. 300, 613 S.W.2d 372, 374 (Ark. 1981).[4]

Petitioner made a determination to settle the case based upon the factors available to him at the time of the settlement. We are not privy to all the factors that prompted his decision. However, we do know that he had been advised by the Research Group that the statute might be held constitutional. He also was aware of several other court decisions where gender-based statutes were held constitutional. See *In the Matter of the Estate of Baer*, 562 P.2d 614 (Utah 1977); *In Re Estate of Rincon*, 327 So. 2d 224 (Fla. 1976). Moreover, Roscopf stated that he had questions as to whether Chanoy had standing to contest the constitutionality of the statute and whether the statute would be declared unconstitutional based upon the facts of the instant case since there was no discrepancy under the

---

[4]Furthermore, Roscopf may not have known what rights Chanoy may have had in decedent's estate if the statute was unconstitutional.

statute between husbands and wives based upon wills executed before marriage. In addition, despite the fact that in *Orr* the Supreme Court had declared that gender-based statutes were unconstitutional, a judicial determination remained to be made based upon the facts of the instant case that the statute was gender-based and that it served no legitimate State purpose.

It is our view that once adverse parties have made an agreement to settle a controversy and that agreement is made in good faith, as part of arm's-length negotiations based upon the law applicable at the time of settlement, then this Court will not step in to invalidate that settlement due to a subsequent change in the law. Such action would be extremely unfair to the parties involved. A settlement that is reached based upon the above principles should be allowed to stand. The settlement herein involved, specifically recognized Chanoy's right to one-third of the personal estate and dower in one-third of the real estate under the Arkansas statute as it then provided, and specifically provided that she accepted the sum of $90,000 in full settlement of those and other statutory rights and in "bona fide recognition" of those enforceable rights. The cash settlement in exchange for those rights would qualify for the marital deduction under section 2056(a) and (c) of the Code as interpreted by section 20.2056(e)-2(d), Estate Tax Regs., *supra*. This conclusion is fully supported by *Estate of Barrett, supra*. See also *Lyeth v. Hoey*, 305 U.S. 188 (1938).

We also reject respondent's argument that the lump-sum settlement amount paid by the estate to Chanoy exceeds the value of Chanoy's enforceable dower rights. Respondent contends that since the value of decedent's estate was listed as $167,172.18, Chanoy's dower interest could not exceed $55,724.06. However, respondent's argument fails to consider that Chanoy was also suing to invalidate the transfers of property made by decedent and Nina Mae prior to their deaths. If Chanoy had been successful in her suit, the result would have been an increase in decedent's total estate. Hence, the value of Chanoy's dower interest under the statute would also have been increased. We hold for petitioner on the above two issues.

*Addition to Tax*

Section 6075(a) provides that an estate tax return must be filed within 9 months after the date of a decedent's death. Section 6651(a)(1) provides for an addition to tax of up to 25 percent of the amount of tax required to be shown on the return for a failure to file a tax return on the date prescribed therefor. The addition to tax does not apply if the failure is shown to be due to reasonable cause. The burden of proof with respect to this addition to tax is upon petitioner. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a).

Petitioner contends that there was reasonable cause for the untimely filing of decedent's estate tax return.[5] Petitioner states that he was inexperienced in the settlement of an estate and was not aware of the filing requirements or the due date of a Federal estate tax return. In addition, petitioner argues that Roscopf assumed that the same accountants who had filed Nina Mae's estate tax return would file an estate tax return for decedent's estate. Therefore, Roscopf did not take steps to complete a return for decedent's estate. Petitioner contends that he exercised ordinary business care and prudence by engaging an attorney to settle decedent's estate which is all that he was required to do.

Respondent, on the other hand, contends that petitioner's untimely filing of decedent's estate tax return lacked reasonable cause. Respondent relies upon *United States v. Boyle*, 469 U.S. 241 (1985), as support for his contention. In addition, respondent cites *Boyle* in support of his contention that an executor's duty to timely file a return is personal and nondelegable. For the reasons set forth below we agree with respondent.

The situation in this case is clearly controlled by *United States v. Boyle, supra.* In *Boyle*, the executor hired an attorney to settle an estate. The attorney filed the return 3

---

[5]On brief, petitioner suggests that Chanoy interfered with the filing of the return by withholding information. However, petitioner did not present any evidence to support this allegation, and evidence was introduced to show that on Dec. 20, 1979, Chanoy filed an affidavit attesting that she had filed with the Chancery Court all records, documents, and papers in her possession that had belonged to decedent. Moreover, petitioner's allegation is refuted by the fact that the inventory he filed with the untimely estate tax return on Apr. 18, 1980, was the same inventory that he filed earlier on June 29, 1979, with the probate court.

months late. The Supreme Court held that the executor's duty to file an estate tax return was a nondelegable one. The Court indicated that the administrative regulations and practices exempt late filings from the penalty when the tardiness results from postal delays, illness, and other factors largely beyond the taxpayer's control. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. It also recognized that a taxpayer's reliance on an attorney's advice concerning a question of law might be considered reasonable cause. See *Commissioner v. Lane-Wells Co.*, 321 U.S. 219 (1944). But it held that a taxpayer's reliance on an attorney to tell him when a return is due does not constitute reasonable cause for a late filing. The Court stated, 469 U.S. at 249-250:

> Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline, and then to meet that deadline, except in a very narrow range of situations. Engaging an attorney to assist in the probate proceedings is plainly an exercise of the "ordinary business care and prudence" prescribed by the regulations * * * but that does not provide an answer to the question we face here. To say that it was "reasonable" for the executor to *assume* that the attorney would comply with the statute may resolve the matter as between them, but not with respect to the executor's obligations under the statute. Congress has charged the executor with an unambiguous, precisely defined duty to file the return within nine months; extensions are granted fairly routinely. That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute. [Emphasis in original.]

The evidence in this case does not indicate that petitioner was ill or incompetent or that he relied on advice of an attorney that an estate tax return need not be filed. Petitioner does contend that he was inexperienced in estate tax matters. However, he had served previously as the executor of his mother's estate, and he stated that he was aware that a Federal estate tax law existed and that a return might be due for his father's estate. We also note that "It requires no special training or effort to ascertain a deadline and make sure that it is met."' *United States v. Boyle*, 469 U.S. at 252. It was petitioner's nondelegable duty to ensure that the estate tax return was timely filed.

Based upon the above discussion, we find that reasonable cause does not exist for the late filing of decedent's estate tax return. Therefore, we uphold respondent's determination of an addition to tax under section 6651(a)(1).

Due to concessions and agreements between the parties,

*Decision will be entered under Rule 155.*