**ESTATE OF George M. BRANDON, Deceased, Willard C. Brandon, Executor, Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 86–2036.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1987.

Decided Sept. 14, 1987.

Elain F. Ferris, Washington, D.C., for appellant.

Richard A. Williams, Little Rock, Ark., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ROSS, Senior Circuit Judge.*

The Commissioner of Internal Revenue (Commissioner) appeals the decision of the United States Tax Court holding that the Estate of George M. Brandon (Estate) is entitled to an estate tax marital deduction of $90,000, based upon a settlement payment made to decedent's surviving spouse. On appeal, the Commissioner argues that the Tax Court erred in allowing the marital deduction without first making an independent determination as to whether decedent's surviving spouse had an enforceable claim against the estate under the state dower election statute, ARK. STAT. ANN. § 60–501 (1971), at the time the settlement agreement was reached. The Commissioner also argues that the Tax Court erred in allowing as the marital deduction the full $90,000 paid to decedent's surviving spouse since an enforceable one-third dower interest in decedent's estate would have amounted to less than $56,000. For the reasons set forth below, we reverse and remand the case for further consideration.

**FACTS**

George M. Brandon (decedent), a resident of West Helena, Arkansas, died testate on January 14, 1979. He was survived by his second wife, Chanoy Lee Shockley Brandon, to whom he had been married for less than one year, his son from his first marriage, Willard C. Brandon, and two grandsons, Jeffrey K. Brandon and Stephen A. Brandon. Decedent's first wife of almost 54 years, Nina Mae Brandon, predeceased decedent on November 6, 1976. Appellant Willard C. Brandon is the executor of decedent's estate.

On August 10, 1976, prior to Nina Mae's death, decedent executed a codicil to his will, which provided a cash bequest of $25,-000 to Chanoy Lee Shockley, a clerk in the farm commissary where decedent worked as manager. The codicil stated that the

bequest was made "in recognition of the loyalty and devotion" Chanoy had displayed to decedent and his family. The codicil also provided that Chanoy, who rented a house from decedent and Nina Mae, could continue to live in her residence for a reasonable time after decedent's death until she could find a suitable place to live.

Also prior to Nina Mae's death, Nina Mae conveyed real estate held by her, including the homestead she shared with decedent, to her two grandchildren. The remainder of Nina Mae's estate was either held jointly with decedent or passed to him upon her death under the marital deduction provision or residue trust provision of her will.

After Nina Mae's death but prior to decedent's marriage to Chanoy, decedent disposed of all of his real estate holdings by either gift or sale to his son, Willard, and to his grandchildren. Thereafter, on February 10, 1978, decedent married Chanoy and they lived together as husband and wife until his death.

Shortly after decedent's death, decedent's attorney gave Chanoy Brandon formal notice of her right, as surviving widow, to elect to take against decedent's will, pursuant to ARK. STAT. ANN. § 60–501 (1971). He also prepared and filed an inventory of decedent's estate on June 29, 1979, listing the value of the total estate as $167,172.18.

Following decedent's death, Chanoy's relationship with decedent's son and grandsons deteriorated. On June 21, 1979, Jeffrey K. Brandon, decedent's grandson, filed a complaint for unlawful detainer against Chanoy in the Circuit Court of Phillips County, Arkansas, seeking to have her evicted from the Brandon family home where she had resided with decedent. The basis for the complaint was that this property had been conveyed to him by his grandmother, Nina Mae, on April 22, 1976. On July 23, 1979, Chanoy moved to dismiss the complaint filed by Jeffrey Brandon on the grounds that the conveyance of the

---

* The Honorable Donald R. Ross was an active judge of the Eighth Circuit Court of Appeals on the date this case was submitted, but took senior status on June 13, 1987, before the opinion was filed.

family home by Nina Mae to Jeffrey was invalid. She specifically alleged that Nina Mae was incompetent at the time the warranty deed was signed, that the deed was not supported by consideration, that she had a right as decedent's widow to occupy the residence, and that she did not have a landlord-tenant relationship with Jeffrey.

On October 19, 1979, Chanoy filed a complaint in equity in the Chancery Court of Phillips County, Arkansas, seeking to set aside certain transfers of property by Nina Mae and the decedent. She specifically alleged that the transfers of property by Nina Mae shortly before her death were invalid, because Nina Mae was incompetent and lacking in capacity at the time the warranty deeds were signed. Chanoy also alleged that the transfers of property by decedent shortly before his marriage to her were a breach of fiduciary duties and a fraudulent abuse of a confidential relationship.

Thereafter, on October 22, 1979, Chanoy filed an election to take against decedent's will, pursuant to ARK. STAT. ANN. § 60–501 (1971). By making the election, Chanoy renounced all benefits under decedent's will and codicil to his will. In response to Chanoy's election, the executor of the estate moved to dismiss the action on the grounds that the election statute violated the equal protection clause of the fourteenth amendment, based upon the United States Supreme Court's holding in *Orr v. Orr*, 440 U.S. 268, 278–83, 99 S.Ct. 1102, 1111–13, 59 L.Ed.2d 306 (1979). In that case, the Supreme Court held that gender-based statutes which do not serve a legitimate governmental purpose are unconstitutional. The executor also argued that the statute violated the equal protection clause of the Arkansas Constitution.

Chanoy later amended her complaint in equity, alleging that the property transfers from Nina Mae to her grandsons should be set aside on the grounds that Nina Mae's signatures on the deeds were forgeries.

Chanoy also sought to set aside certain property as a homestead and to receive a dower share in decedent's properties.

To assist in determining the estate's legal position with respect to Chanoy's claims, the attorney for decedent's estate sought a legal opinion from the Research Group, Inc. of Charlottesville, Virginia. In a memorandum of law dated February 4, 1980, the Research Group indicated that the estate may not have standing to raise the issue of the constitutionality of the statute. The memorandum also noted that several state courts had upheld similar state statutes against equal protection challenges on the grounds that they satisfied a legitimate state purpose. The memorandum concluded that, even in light of the Supreme Court's holding in *Orr v. Orr, supra*, it was possible that the Arkansas dower election statute would be held constitutional.

Finally, on June 3, 1980, after lengthy negotiations, the parties [1] entered into a settlement agreement in which Chanoy accepted the sum of $90,000 in return for a full release of all claims she held against decedent's estate and the other parties involved. The settlement agreement was approved by the Chancery Court that same day.

On April 18, 1980, the estate filed its federal estate tax return, claiming the full amount of the $90,000 settlement payment to Chanoy as a marital deduction under section 2056(a) of the Internal Revenue Code. The Commissioner allowed only $25,000 as a marital deduction, however, on the ground that Chanoy did not have a legally enforceable claim against decedent's estate in excess of that amount. As a result, a deficiency in federal estate tax in the amount of $33,560 was determined against the estate. The estate subsequently brought this action in Tax Court for a redetermination of the deficiency.

1. Willard C. Brandon, as Personal Representative in Succession of the Estate of Nina Mae Brandon and Personal Representative of the Estate of George M. Brandon; Willard C. Brandon, in his individual capacity as decedent's son, along with his wife, Dorothy G. Brandon; Jeffrey K. Brandon, and his wife, Jamie L. Brandon; Stephen A. Brandon, and his wife, Anita W. Brandon; and Chanoy L. Brandon.

Shortly thereafter, in *Stokes v. Stokes*, No. 80–141 (Ark. Dec. 8, 1980), the Arkansas Supreme Court had its first opportunity to consider the constitutionality of the state dower election statute, section 60–501, and other statutes relating to state dower rights, in light of the United States Supreme Court's decision in *Orr v. Orr, supra.* The Arkansas Supreme Court initially found the statute to be valid, and affirmed the trial court's allowance of a dower interest to the widow in decedent's estate. However, on February 23, 1981, upon rehearing of the case, the court reversed its prior decision and held ARK. STAT. ANN. § 60–501, and the other dower-related statutes, to be unconstitutional based upon the equal protection analysis set forth in *Orr v. Orr, supra. Stokes v. Stokes,* 271 Ark. 300, 613 S.W.2d 372, 375–76 (1981).

The Tax Court heard argument and evidence in this case in May of 1985. On March 10, 1986, the court held that the decedent's estate was entitled to a marital deduction for the full amount of the settlement agreement pursuant to section 2056, because the parties had entered into the agreement in bona fide recognition of the surviving spouse's enforceable rights under state law as the result of good faith, arm's-length negotiations. *Estate of Brandon v. Commissioner,* 86 T.C. 327 (1986). The Tax Court specifically stated:

In determining whether a settlement agreement is a "bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate," courts examine whether or not the agreement was made in good faith as the result of arm's-length negotiations. *Estate of Barrett v. Commissioner,* 22 T.C. 606 (1954).

\*    \*    \*    \*    \*    \*

It is our view that once adverse parties have made an agreement to settle a controversy and that agreement is made in good faith, as part of arm's-length negotiations based upon the law applicable at the time of settlement, then this Court will not step in to invalidate that settlement due to a subsequent change in the

law. Such action would be extremely unfair to the parties involved. A settlement that is reached based upon the above principles should be allowed to stand. The settlement herein involved, specifically recognized Chanoy's right to one-third of the personal estate and dower in one-third of the real estate under the Arkansas statute as it then provided, and specifically provided that she accepted the sum of $90,000 in full settlement of those and other statutory rights and in "bona fide recognition" of those enforceable rights. The cash settlement in exchange for those rights would qualify for the marital deduction under section 2056(a) and (c) of the Code as interpreted by section 20.2056(e)–2(d), Estate Tax Regs., *supra.* This conclusion is fully supported by *Estate of Barrett, supra.* See also *Lyeth v. Hoey,* 305 U.S. 188, [59 S.Ct. 155, 83 L.Ed. 119] (1938).

*Id.* at 335, 337 (footnote omitted). The Commissioner now appeals.

## DISCUSSION

Section 2056(a) of the Internal Revenue Code of 1954 (26 U.S.C.) provides, in pertinent part:

the value of the taxable estate shall \* \* be determined by deducting from the value of the gross estate an amount equal to the value of *any interest in property which passes or has passed from the decedent to his surviving spouse,* but only to the extent that such interest is included in determining the value of the gross estate.

(Emphasis added.) Section 2056(d) further provides that:

For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

\*    \*    \*    \*    \*    \*

(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent; \* \* \*.

Interests that pass to the surviving spouse as the result of a will contest are subject to special rules, set forth in Treasury Regula-

tion, 26 C.F.R. § 20.2056(e)–2(d). Specifically, subsection (2) of section 20.2056(e)–2(d) pertains to situations, such as the present case, where property is transferred to the surviving spouse in settlement of her claims against the estate. Section 20.-2056(e)–2(d)(2) provides:

> (2) If as a result of the controversy involving the decedent's will, or involving any bequest or device thereunder, a property interest is assigned or surrendered to the surviving spouse, *the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender as a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate.* Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. *If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.*

(Emphasis added.)

### A. Enforceability of Surviving Spouse's Dower Claims

The parties agree that section 20.2056(e)–2(d)(2) governs the disposition of this case, and that the "passing" of an interest from the decedent to the surviving spouse is deemed to have occurred only if the settlement was executed in "bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate."

The Commissioner concedes that the settlement agreement was reached only after good faith, arm's-length negotiations by all parties, and further admits the reasonableness of the executor's belief at the time of settlement that Chanoy might ultimately prevail on her claim if litigation were to continue. The Commissioner argues, however, that the foregoing is not sufficient to qualify the settlement payment for the estate tax marital deduction, citing *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). In that case, the Commissioner argues, the United States Supreme Court stated that the availability of the estate tax marital deduction turns upon the actual enforceability of the surviving spouse's claims in the decedent's estate under applicable state law. In addition, where the highest state court has not interpreted applicable state law, the federal court hearing the tax controversy is required to do so. In the present case, the constitutionality of the state dower election statute, ARK.STAT.ANN. § 60–501, was uncertain at the time of the settlement. The Commissioner thus concludes that the parties' good faith beliefs as to the enforceability of Chanoy's claims at the time of settlement are irrelevant to the determination of the extent to which the estate qualifies for the marital deduction. The Commissioner further concludes that, because the enforceability of Chanoy's dower claims for estate tax purposes turned upon whether the state dower election statute was constitutional at the time of the settlement, the Tax Court was required in the first instance to determine the constitutionality of the statute at the time of settlement. The Commissioner specifically contends that had the Tax Court engaged itself in analyzing the constitutionality of section 60–501, that court in all likelihood would have invalidated the statute on equal protection grounds under the rationale of *Orr v. Orr, supra,* and the Arkansas Supreme Court's decision of *Stokes v. Stokes, supra,* rendered after the settlement agreement was reached. The Commissioner argues that the Tax Court's failure to consider the constitutionality of the statute, and the court's reliance upon *Estate of Barrett v. Commissioner, supra,* 22 T.C. 606, as stating the test for determining the enforceability of the surviving spouse's claims, i.e., whether the settlement agreement was made as the result of good faith, arm's-length negotiations, was error.

The decedent's estate argues that the Tax Court correctly held that enforceability of the surviving spouse's claims against the estate is determined for estate tax purposes, on the basis of the law as it existed at the time the settlement was reached, rather than on the basis of a subsequent change in the law. The estate argues that the Tax Court recognized that on the date of settlement Chanoy had an enforceable right to receive her dower share in decedent's estate, because ARK.STAT.ANN. § 60–501 had not at that time been declared unconstitutional. Although the Tax Court did not address the implications of *Bosch, supra*, to the present case, the estate argues that the Tax Court impliedly found that the law at the time of settlement did support Chanoy's dower rights in the estate. The estate also argues that the Commissioner's position conflicts with regulation section 20.2056(e)–2(d). The estate contends that if enforceability means that the estate must establish the validity of the surviving spouse's claim beyond any shadow of doubt, then the term "bona fide" used throughout subparagraph (2) becomes mere surplusage and the parties' good faith in evaluating the validity of the claim is irrelevant. This interpretation, the estate argues, goes against the manifest intent of the Regulations to encourage settlements, and would as a practical matter force the estate to litigate the surviving spouse's claims.

In *Bosch*, the Supreme Court reviewed two cases involving a state law question in which the eligibility of the federal estate tax marital deduction was affected. In both cases the issue before the Court was what effect must be given to a state trial court adjudication of property rights where the United States is not made a party to the proceeding and where such adjudication affects the estate's federal estate tax liability. The Supreme Court held that when federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court. Where the highest court of the state has not spoken, "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.* at 465, 87 S.Ct. at 1783. In this regard, the federal court effectively sits as a state court. The Supreme Court further indicated that the federal court's determination of state law in these kinds of cases "would avoid much of the uncertainty that would result from the 'non-adversary' approach and at the same time would be fair to the taxpayer and protect the federal revenue as well." *Id.* The majority of the Court rejected the view that federal courts must attribute conclusiveness to a state court judgment, other than a judgment from the highest court of the state, unless the litigation from which the judgment resulted did not bear the indicia of a genuinely adversary proceeding.

The Commissioner argues that the principles set forth in *Bosch* should be applied in the present case in the same manner as they were applied in *Ahmanson Found. v. United States*, 674 F.2d 761 (9th Cir.1981). In that case the decedent left a trust agreement giving his surviving spouse the sum of $5,000,000. Following his death, the surviving spouse argued that she also was entitled to an additional amount in satisfaction of her community property rights. This claim was negotiated and settled for the additional sum of $750,000. As in the present case, the estate claimed the full settlement payment as part of the estate tax marital deduction. The government disallowed deduction of the settlement payment, arguing that under state law the surviving spouse did not have an enforceable right to receive any amount of property beyond the $5,000,000 left to her under the terms of decedent's trust. The estate argued, however, that where a private good faith settlement of the surviving spouse's claims against the estate is the result of a genuine adversary proceeding and is approved by the state court, then the settlement agreement should be considered a bona fide recognition of enforceable rights of the surviving spouse and binding for federal estate tax purposes.

In considering the enforceability issue raised by the government, the Ninth Circuit carefully examined the holding of *Bosch,* noting that "the majority [of the Supreme Court] concluded that the test of 'passing' for estate tax purposes should be whether the interest reaches the spouse pursuant to state law, correctly interpreted [by the federal court]—not whether it reached the spouse as a result of a good faith adversary confrontation." *Id.* at 774. The court agreed with the government that if a state court adjudication as a result of a good faith adversary proceeding is not binding for estate tax purposes pursuant to *Bosch,* then a private good faith settlement cannot be either. The court found that under *Bosch* the issue of deductibility turned on whether the settlement payment was made pursuant to an enforceable right, i.e., whether state law entitled the surviving spouse to at least $750,000 of property above and beyond the $5,000,000 given to her under decedent's trust. The court opined that the evidence did not support any conclusion that the settlement payment was based upon an enforceable right under state law. The court therefore remanded the case to the district court for a determination of whether state law supported the additional payment made to the surviving spouse.

■ We agree with the Ninth Circuit's analysis and application of the principles set forth in *Bosch* with respect to good faith settlements of a surviving spouse's claims against the estate. Specifically, we agree that "under even the most narrow reading of *Bosch,* either a good faith settlement or a judgment of a lower state court must be based on an enforceable right, under state law properly interpreted, in order to qualify as 'passing' pursuant to the estate tax marital deduction." *Ahmanson, supra,* 674 F.2d at 775.

■ *Bosch* and *Ahmanson* support the conclusion that the Tax Court was required, in this instance, to make an independent determination as to the enforceability of Chanoy Brandon's dower claims against the estate under state law at the time the settlement was reached. Specifi-cally, the Tax Court was required to consider the constitutionality of the Arkansas dower statute at the time of settlement, in light of *Orr v. Orr.* Having carefully reviewed the Tax Court's opinion, we find that the Tax Court failed to do so. The Tax Court's reliance upon *Estate of Barrett v. Commissioner, supra,* holding that the test for determining the enforceability of the surviving spouse's claims against the estate is whether or not the settlement agreement was made as the result of good faith, arm's-length negotiations, was improper, because that case appears to have been overruled *sub silentio* by *Bosch.* We therefore remand for a determination of the constitutionality of ARK.STAT.ANN. § 60–501 at the time the settlement was reached.

### B. Enforceability of Surviving Spouse's Other Claims

■ The Commissioner further argues that, even if it is determined that Chanoy Brandon did have enforceable dower rights under state law, Chanoy was not entitled to receive the full $90,000 paid to her pursuant to the settlement agreement. The Commissioner notes that the Arkansas dower statute entitles a surviving spouse to only one-third of a decedent's property, and that in this case the value of decedent's gross estate was $167,172.18. Thus, the Commissioner argues, the maximum amount to which Chanoy could have an enforceable right is $55,724.06. The Tax Court rejected the Commissioner's argument, noting that the $90,000 settlement payment also took into account Chanoy's claim to a dower interest in certain other property transferred by decedent and his first wife prior to their deaths.

We feel the issue presented here is essentially the same as that presented above, i.e., whether Chanoy Brandon had an enforceable right under state law to amounts in excess of one-third of decedent's gross estate. *Bosch* and *Ahmanson* require the Tax Court to make this determination in deciding whether such amounts qualify for the estate tax marital deduction.

The court also notes the Tax Court's statement that the amounts paid to Chanoy Brandon in excess of one-third of decedent's gross estate are in satisfaction of her claims against property transferred by decedent and his first wife prior to their deaths. On remand, we ask the Tax Court to consider whether decedent's estate should be allowed an estate tax marital deduction for property passing to a surviving spouse which was not included in decedent's gross estate for federal estate tax purposes.

Reversed and remanded.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent. I would affirm the Tax Court. The ultimate issue in this case simply is whether Chanoy had "enforceable rights" to her deceased husband's estate on June 3, 1980. I believe that she did.

On June 3, 1980, Chanoy and representatives of the decedent's estate entered into an agreement whereby each party compromised its right to the estate. Because the status of the dower election statute was unclear at the time, a legal opinion was prepared by the Research Group, Inc. The Group concluded that the statute was not clearly unconstitutional. In fact, ten months after the opinion was prepared, and six months after the settlement agreement was signed, the Arkansas Supreme Court ruled that the statute was constitutional. *Stokes v. Stokes,* No. 80–141 (Ark. Dec. 8, 1980).[1] Only upon rehearing did the court declare the statute unconstitutional. I agree with the Tax Court that we should not step in to invalidate a good faith agreement which was based on the law as it then existed simply because the law has since changed. The majority's failure to recognize the validity of the agreement in this case will discourage out of court settlements of similar matters because without immediate Tax Court approval, subsequent changes in state law may invalidate otherwise valid settlement agreements and result in greater estate tax liability.

Further, even if the Tax Court did not specifically mention *Bosch* and *Ahmanson,* it is not necessary to remand for a consideration of the constitutionality of the dower election statute on June 3, 1980. More important than whether the statute was unconstitutional is whether Chanoy's rights were enforceable. To be sure, the dower election statute was declared unconstitutional on February 23, 1981 in *Stokes v. Stokes,* 271 Ark. 300, 613 S.W.2d 372 (1981). However, this did not affect the enforceability of Chanoy's dower interest because the Arkansas Supreme Court later held that its decision in *Stokes* would not be applied retroactively to strip away dower rights which vested prior to *Stokes. See Mobley v. Estate of Parker,* 278 Ark. 37, 642 S.W.2d 883 (1982); *Hall v. Hall,* 274 Ark. 266, 623 S.W.2d 833 (1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1770, 72 L.Ed.2d 175 (1982). In the present case Chanoy's rights vested on June 3, 1980 when the agreement was reached and approved by the Chancery Court. Because under state law Chanoy's interest was valid and enforceable, the requirements of Internal Revenue Code § 2506(a) have been met and the estate is entitled to a marital deduction.

This outcome would be different if the executor of the estate had pursued its challenge to Chanoy's election and had convinced the Arkansas courts that the dower election statute was unconstitutional. Under those circumstances Chanoy's rights would have been unenforceable. In the present case, however, once a settlement was reached Chanoy's rights became enforceable, and pursuant to *Mobley* and *Hall,* unaffected by the decision in *Stokes.*

---

**1.** It is also of interest to note that the later held gender deficient dower state was corrected by the Arkansas legislature making it gender neutral. *See* Ark.Stat.Ann. § 60–501 (Supp.1985).