T.C. Memo. 2012-7

UNITED STATES TAX COURT

ESTATE OF RAYMOND J. GILL, DECEASED, SABAL TRUST COMPANY,
PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12885-00.                    Filed January 9, 2012.

<u>Mitchell I. Horowitz</u>, for petitioner.

<u>Stephen Rickio Takeuchi</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined a deficiency in
the Federal estate tax of the Estate of Raymond J. Gill (estate)
of $2,795,426.  In the more than 10 years this case has been
pending, the parties have settled multiple issues.  The issues
remaining for decision are:

(1)  Whether the estate is entitled to a deduction for certain section 2053[1] administration expenses totaling $884,950.57.  These expenses relate to litigation between decedent's second wife and his children.  We hold that the estate is entitled to a deduction for a portion of those expenses; and

(2)  whether the amount of the marital deduction should be reduced by Federal estate taxes and State death taxes of $47,752.54.  We hold that the amount of the marital deduction should not be reduced.

## FINDINGS OF FACT

Raymond J. Gill (decedent) was a resident of Florida when he died on September 19, 1996.  Sabal Trust Co. is the personal representative of his estate and has its principal offices in Florida.

Decedent's first wife, Joan Gill, died on January 11, 1995. At the time of her death, Joan Gill and decedent had been married 43 years.  Decedent and Joan Gill had two children, Pamela Gill Alabaster (Ms. Alabaster) and Mark Gill (collectively referred to as Gill children).  Ms. Alabaster had two children at the time decedent died (grandchildren).

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the date of decedent Raymond J. Gill's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1. <u>Original Estate Plan</u>

On July 5, 1994, decedent and Joan Gill each executed estate planning documents with the assistance of counsel. Both decedent and Joan Gill created trust structures to which they contributed certain assets.

Decedent created a revocable living trust which would pay income to decedent for life. All trust assets would be distributed on decedent's death as follows: (a) If Joan Gill survived decedent, to a newly created credit shelter trust up to the estate tax exclusion amount, with the residue to Joan Gill in a newly created marital trust for life and remainder to the Gill children, or (b) if Joan Gill did not survive decedent, to decedent's children and grandchildren. Hereinafter the living trust and the marital trust are referred to as decedent's Living Trust and decedent's Marital Trust, respectively. Decedent's Living Trust instrument also provided that upon decedent's death the trust would establish and pay $100,000 to trust funds for each living grandchild (grandchildren's trusts).

Likewise, Joan Gill created a revocable living trust which would pay her income for life. All trust assets would be distributed on her death as follows: (a) If decedent survived Joan Gill, to a newly created credit shelter trust up to the estate tax exclusion amount, with the residue to decedent in a newly created marital trust for life and remainder to the Gill

children (hereinafter these three trusts are referred to as Joan Gill's Living Trust, Joan Gill's Credit Shelter Trust, and Joan Gill's Marital Trust), or (b) if decedent did not survive Joan Gill, to Joan Gill's children and grandchildren.

In both decedent's and Joan Gill's trust structures, the trustee of the living trust would also serve as the trustee of the credit shelter and marital trusts. Joan Gill and decedent were named cotrustees of both living trusts. Upon the death of either Joan Gill or decedent, the surviving spouse would become the sole trustee of both living trusts (and therefore trustee of the other's marital and credit shelter trusts), with the Gill children becoming cotrustees upon the death or inability to serve of the surviving spouse.

Joan Gill's Living Trust instrument provided that if decedent survived her, upon decedent's death all Federal estate taxes and State death taxes attributable to the inclusion of property of Joan Gill's Marital Trust in the gross estate of decedent were to be paid from the assets of Joan Gill's Marital Trust.

The Gill children became familiar with their parents' estate plans in 1994. Upon Joan Gill's death in January 1995 decedent became the sole trustee of Joan Gill's Living Trust (and therefore trustee of Joan Gill's Credit Shelter Trust and Joan

Gill's Marital Trust as well). His actions taken while trustee would be the subject of later litigation, as discussed below.

2. Decedent's Relationship With Valerie Gill and Alteration of the Original Estate Plan

Decedent was an executive for ITT and often traveled to Germany because he oversaw a German company that had been acquired by ITT. Valerie Gill was an employee of the German company and first met decedent in 1979. At the time, Valerie Gill was a citizen of Germany.

Two months after Joan Gill's death, decedent informed the Gill children that he was considering taking a "life partner". Decedent asked Valerie Gill to marry him and she came to the United States, where she first met the Gill children in April 1995. Decedent and Valerie Gill entered into a prenuptial agreement on April 19, 1995, pursuant to which decedent and Valerie Gill each waived their applicable marital rights to the property of the other, including any rights to the other's estate at death. Decedent and Valerie Gill were married in April 1995. At the time of his marriage to Valerie Gill, decedent had lung cancer and was undergoing debilitating chemotherapy. Valerie Gill cared for decedent from the time she came to the United States until his death.

On August 28, 1995, decedent amended the terms of decedent's Living Trust. Under the amendment, upon decedent's death Valerie Gill and SunTrust Bank (SunTrust) were to become cotrustees. The

Gill children would not become cotrustees until the refusal or inability of Valerie Gill to serve as a trustee. The amendment further directed that all income of decedent's Marital Trust be paid to Valerie Gill for life, with trustee discretion to also pay trust principal to Valerie Gill. The Gill children retained their remainder interest in decedent's Marital Trust.

Also on August 28, 1995, decedent executed a last will and testament which named Valerie Gill and SunTrust as co-personal representatives of his estate, devised decedent's tangible personal property to Valerie Gill, and transferred the estate residue to decedent's Living Trust. This will superseded a prior will which had named the Gill children co-personal representatives of decedent's estate.

3. Litigation Resulting From Decedent's Actions Taken While Trustee of Joan Gill's Living Trust

Upon decedent's death in September 1996, Valerie Gill and SunTrust became the cotrustees of decedent's Living Trust, according to the amended terms of the trust. In October 1996 Valerie Gill and SunTrust were also appointed co-personal representatives of the estate by a probate court order as decedent's will dated August 28, 1995, provided.

In January 1997 the Gill children filed a statement of claim against the estate alleging breach of fiduciary duties by decedent while acting as trustee of Joan Gill's Living Trust. The Gill children requested complete accountings for all of the

assets of Joan Gill's Living Trust (which included the assets of both Joan Gill's Credit Shelter Trust and Joan Gill's Marital Trust).

Litigation between the Gill children and Valerie Gill and SunTrust (in their roles as co-personal representatives of the estate) resulted. It was alleged that decedent had made improper withdrawals of trust principal from both Joan Gill's Credit Shelter Trust and Joan Gill's Marital Trust. A settlement was reached in which the co-personal representatives agreed to pay the Gill children $545,508.14 from the estate (the Joan Gill trust settlement). The $545,508.14 included, in part, $360,931.79 which should have been paid to Joan Gill's Marital Trust by decedent and $160,929.45 which should have been paid to Joan Gill's Credit Shelter Trust by decedent.

Pursuant to the Joan Gill trust settlement, $95,787.82 representing Federal estate taxes and State death taxes previously paid by the estate was subtracted from the $545,508.14 as a means of reimbursing the estate for previously paying such taxes. This $95,787.82 in taxes was generated by the $360,931.79 which should have been paid to Joan Gill's Marital Trust by decedent (but was included in his estate when he failed to pay it to Joan Gill's Marital Trust) and by an additional $358,807.26. The additional $358,807.26 was not part of the $545,508.14 settlement but comprised assets separately distributed in

decedent's estate and living trust instruments to: (1) The Gill children ($20,527 in tangible personal property, distributed to Valerie Gill in decedent's will but passing to the Gill children upon her disclaimer); (2) the grandchildren ($138,280.26 in individual retirement accounts (IRAs) payable); and (3) the grandchildren's trusts ($200,000 in cash, distributed under terms of decedent's Living Trust).

4.   <u>Litigation Resulting From Alterations to Decedent's Original Estate Plan</u>

In late 1996 Ms. Alabaster contacted an attorney about challenging decedent's amended estate plan. In January 1997 the Gill children filed a complaint against Valerie Gill in her individual and fiduciary capacities and against SunTrust in its fiduciary capacity. This litigation was brought by the Gill children in both their individual and fiduciary capacities, as they were successor cotrustees of decedent's Living Trust under both the original and amended terms of decedent's Living Trust. The Gill children also sued in their fiduciary capacities as nominated co-personal representatives of decedent's estate under a prior will of decedent's.

In the complaint, the Gill children sought to set aside decedent's will and amendments to decedent's Living Trust, alleging that Valerie Gill exerted undue influence on decedent and forced decedent to amend his estate plan for her benefit. In December 1997 Valerie Gill and SunTrust filed an answer to the

complaint. Litigation ensued over the next 3 years and the parties entered court-ordered mediation.

Mediation led to the execution of a settlement agreement in September 2000 (the 2000 settlement agreement) which resolved the undue influence issue. The 2000 settlement agreement provided, among other things, that Valerie Gill would pay $274,906.76 to the estate to be distributed to the Gill children and would give $1,725,093.24 to the Gill children. Valerie Gill was also required to resign as trustee of decedent's Living Trust, with SunTrust to become the sole trustee. The 2000 settlement agreement was contingent upon Valerie Gill's becoming a U.S. citizen within 2 years of execution.

Valerie Gill became a U.S. citizen in February 2002 but thereafter failed to uphold her obligations under the 2000 settlement agreement. Instead, in September 2002 Valerie Gill and SunTrust, in their fiduciary capacities, filed a declaratory judgment action in the Civil Division of the Circuit Court for Sarasota County to set aside the 2000 settlement agreement. The suit alleged the 2000 settlement agreement was "void due to mutual mistake, unenforceable terms, [and] a complete lack of a meeting of the minds". This suit was found to be frivolous and was dismissed with prejudice. Valerie Gill and SunTrust appealed the dismissal to the Second District Court of Appeal in Lakeland, Florida, but it was affirmed in 2004. After losing the appeal,

Valerie Gill filed a second declaratory judgment action in probate court, this time in her individual capacity. The court in that case entered summary judgment in favor of the Gill children, holding that Valerie Gill could not challenge the validity of the 2000 settlement agreement.

Beginning in 2002 the Gill children also filed various actions in either their individual or individual and fiduciary capacities. These actions were taken in response to Valerie Gill's failure to carry out the 2000 settlement agreement and were for the purpose of enforcing that agreement or preserving estate assets against what the Gill children perceived to be improper expenditures by Valerie Gill and SunTrust (because Valerie Gill and SunTrust, as co-personal representatives of the estate, were spending the estate's money by initiating and then appealing cases which were found to be frivolous). The Gill children did not seek assets in excess of what they would have received under the 2000 settlement agreement.

Litigation between the parties lasted several years. During this time, Valerie Gill and SunTrust still refused to comply with the terms of the 2000 settlement agreement. It became clear that the best option for all parties, including the estate, would be another round of mediation, which the parties entered into in 2006. Jack Falk (Mr. Falk) of the law firm Dunwoody White served as the mediator. A new settlement agreement was entered into in

June 2007 (the 2007 settlement agreement). By this time the parties had incurred legal fees of hundreds of thousands of dollars.

The 2007 settlement agreement was approved by the Circuit Court for Sarasota County, Florida, in August 2007. In approving the 2007 settlement agreement the circuit court stated:

> Based upon more than 15 hearings held before the undersigned judge since 1999, the Court specifically finds that the professional services referred to in paragraphs 2.a.i., ii., and iii. of the Settlement Agreement, were and will be essential to the proper administration and settlement of the Estate and Living Trust, and necessary to determine the beneficiaries, to carry out the intent of the above Decedent and to effect the proper distribution of said Estate and Living Trust * * *.

Paragraphs 2.a.i., ii., and iii. of the 2007 settlement agreement provided for the estate's reimbursement of certain legal fees incurred by the Gill children and Valerie Gill as an individual, as discussed further below. The court also ordered that the mediation fees be split five ways among: (1) The Gill children; (2) Valerie Gill as an individual; (3) the law firm of Kirk Pinkerton (who represented the estate); (4) SunTrust; and (5) the estate.

The 2007 settlement agreement declared the 2000 settlement agreement null and void. It provided that the terms of decedent's Living Trust would undergo reformation to comply with terms of the 2007 settlement agreement. It also provided for the estate to make payments totaling $25,000 to the grandchildren's

trusts.  These payments were reimbursements for attorney's fees and loss of income the trusts had suffered through improper administration of the grandchildren's trusts by the trustees, Valerie Gill and SunTrust.  However, there was no mention in the 2007 settlement agreement itself that the payments included attorney's fees.

Pursuant to the 2007 settlement agreement, the Gill children received a combined $1,150,000 distribution from decedent's Living Trust.  The 2007 settlement agreement also provided that the estate would reimburse the Gill children $575,000 for legal fees incurred from 1997 to 2007 and $20,000 prospectively for their legal fees associated with court approval of the 2007 settlement agreement, reformation of the terms of decedent's Living Trust, and conclusion of this Tax Court case.  These amounts were less than the actual legal fees accumulated by the Gill children during the course of litigation.

Pursuant to the 2007 settlement agreement, an additional $18,000 was paid to a law firm which represented Valerie Gill in her individual capacity for her legal fees associated with court approval of the 2007 settlement agreement, reformation of the terms of decedent's Living Trust, and conclusion of this Tax Court case.

The 2007 settlement agreement further provided that the estate would reimburse the one-fifth shares of the 2006-2007

mediation fees which had been assigned to the Gill children and Valerie Gill in her individual capacity.

All legal fees reimbursed by decedent's estate comprised mostly attorney's fees, although other expenses such as court costs were also included.

5. Other Information

On September 19, 2000, respondent issued a notice of deficiency to the estate determining a deficiency of $2,795,426 in estate tax. The estate timely filed a petition contesting the deficiency. On Schedule J, Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims, of the original Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, the estate had claimed $1,533 of administration expense deductions. In the notice of deficiency respondent allowed additional administration expense deductions of $411,500 as incurred and paid through July 20, 1999.

The estate now seeks to deduct an additional $884,950.57 in administration expenses over amounts respondent previously allowed. Those additional expenses are a result of the protracted litigation after the death of decedent. Those expenses include legal fees and related court costs, accounting fees, trustee and management fees, and a total of $25,000 distributed to the grandchildren's trusts. Respondent contests portions of these additional deductions. An extensive statement

of account for decedent's Marital Trust was kept by SunTrust and was used in determining whether certain administration expenses are deductible, as described below.

The estate and respondent also disagree on whether a portion of the Federal estate taxes and State death taxes reimbursed to the estate pursuant to the Joan Gill trust settlement should reduce the amount of Valerie Gill's marital deduction.

In 2008 Sabal Trust Co. succeeded Valerie Gill and SunTrust as trustee of decedent's trusts and personal representative of the estate.

## OPINION

### I.  Burden of Proof

Generally, taxpayers bear the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner in a notice of deficiency are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any claimed deductions.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  The estate has not argued that respondent should bear the burden of proof.

### II.  Whether Deductions for Certain Administration Expenses Totaling $884,950.57 Should Be Allowed

The estate claimed $1,533 of Schedule J administration expense deductions on the original estate tax return.  In the

notice of deficiency, respondent allowed additional administration expense deductions of $411,500.  The estate now seeks to deduct another $884,950.57 in administration expenses[2] including legal fees, accounting fees, trustee and management fees, and amounts distributed to the grandchildren's trusts.

A.  Legal Fees

The estate seeks to deduct $829,965.09 in additional legal fees paid or reimbursed by the estate from 1999 to 2007.  Those payments were made to various lawyers of the parties involved in the litigation which led to the 2000 and 2007 settlement agreements.  The $829,965.09 in deductions comprises $29,460.18, $195,402.43, $18,965.62, $152.60, $6,746.50, and $579,237.76 for years 1999, 2000, 2001, 2003, 2006, and 2007, respectively. Respondent disputes various amounts of the deductions the estate claims for the following reasons:  (1) The estate overstated some payments; (2) some payments are listed as distributions to/for a beneficiary rather than as administration expenses; (3) the estate has not proved payments to certain lawyers are properly deductible as administration expenses to the estate; and (4) some of the deductions sought are for amounts the estate reimbursed to the Gill children and Valerie Gill individually for their attorney's fees.

---

[2]We have corrected minor mathematical errors made by the parties in their calculations.  Those corrections have reduced the total administration expense deductions sought by $6.

### 1. Overstatement of Some Payments by the Estate

Respondent claims the estate overstated legal fees paid to the estate's lawyers of $13,744.18, $400, and $11,245.50 in 2000, 2003, and 2006, respectively. After examining the statement of account for decedent's Marital Trust kept by SunTrust, we disagree with respondent. In his calculations, respondent took only attorney's fees into account and failed to include related court costs (such as those for transcripts and depositions) incurred by the estate's lawyers. Such costs are deductible under section 20.2053-3(d), Estate Tax Regs.

### 2. Listing of Some Payments as Distributions to/for a Beneficiary

The estate attempts to deduct several payments made to Kirk Pinkerton (the law firm which represented the estate) and listed in the statement of account for decedent's Marital Trust as "distributions to/for a beneficiary" rather than as "administrative expenses". Respondent claims that distributions to/for a beneficiary are not deductible as administration expenses.[3] Respondent therefore disputes amounts the estate

---

[3]Sec. 2053(a) provides that the value of the taxable estate shall be determined by deducting from the value of the gross estate certain expenses of and claims against the estate. It does not provide a deduction for distributions to estate beneficiaries. See Estate of Lazar v. Commissioner, 58 T.C. 543 (1972) (estate failed to distinguish recipient's rights as third-party claimant from that recipient's rights as estate beneficiary; therefore distributions to that recipient not deductible from gross estate).

seeks to deduct of $8,609.70, $4,220, and $1,044 for years 1999, 2000, and 2001, respectively.

It is not clear why some payments to Kirk Pinkerton are listed as distributions to/for a beneficiary rather than as administration expenses. Certain payments were listed as distributions to/for a beneficiary, even though payments made days earlier with the same client and issue numbers were listed as administration expenses. Neither the estate nor respondent has elaborated on the reasoning behind that accounting. Because the estate has not explained the accounting, we hold the estate has not satisfied the burden of proof and may not deduct those amounts.

C. Whether Payments to Certain Lawyers Are Deductible

Respondent claims payments to certain lawyers of $3,000 and $11,245.50 in 2003 and 2006, respectively, are not deductible because the estate has not established that those lawyers provided services to the estate which are deductible as administration expenses under section 20.2053-3(c), Estate Tax Regs. The 2003 statement of account for decedent's Marital Trust lists a $3,000 payment to Nancy Gregoire representing an "attorney retainer fee". The 2006 statement of account lists an $11,245.50 payment to Dunwoody White (Mr. Falk's firm) with the notation "Bene [sic] legal fee".

The estate never presented evidence on or described why Nancy Gregoire was paid the $3,000 retainer, merely stating the she assisted the estate. We therefore find the estate has not met the burden of proof and is not entitled to the $3,000 deduction.

The estate did not explain why the payment was made to Dunwoody White, but we find the payment was for mediation fees which the probate court split five ways among the Gill children, Valerie Gill as an individual, Kirk Pinkerton, SunTrust, and the estate. The estate had agreed to reimburse the fees paid by the Gill children and Valerie Gill. It appears the estate has already deducted a portion of this payment, although the estate did not describe which portions had already been deducted. We hold the portion used to pay off the estate's share of the expenses is deductible (to the extent not already deducted) as an administrative expense under section 2053(a). For the reasons stated below relating to reimbursed attorney's fees of the Gill children and Valerie Gill individually, we also hold that the amount reimbursed to the Gill children is deductible (to the extent not already deducted) under section 2053(a), but the amount reimbursed to Valerie Gill as an individual is not deductible. We additionally hold that the estate has failed to prove its entitlement to any other deductions as a result of the payment made to Dunwoody White.

D. Reimbursement of Certain Attorney's Fees by the Estate

Pursuant to the 2007 settlement agreement, the estate was to reimburse certain legal fees incurred by the Gill children and Valerie Gill in her individual capacity. All such legal fees comprised mostly attorney's fees, although other expenses such as court costs were included. The reimbursements include $575,000 the estate paid to the Gill children for legal fees incurred from 1997 up to execution of the 2007 settlement agreement and $20,000 prospectively for their legal fees associated with court approval of the 2007 settlement agreement, reformation of the terms of decedent's Living Trust, and conclusion of this Tax Court case. Valerie Gill was reimbursed $18,000 for her personal legal fees associated with court approval of the 2007 settlement agreement, reformation of the terms of decedent's Living Trust, and conclusion of this Tax Court case. The estate now seeks a deduction for those reimbursements.

Section 2053(a) requires that legal fees be allowable under the laws of the jurisdiction under which the estate is being administered. See Estate of Reilly v. Commissioner, 76 T.C. 369, 372 (1981). Any legal fees deducted as an administration expense must also be reasonable in amount. Sec. 20.2053-3(c)(1), Estate Tax Regs. Finally, regulations require that for an estate to deduct legal fees (including attorney's fees) as an administration expense, the fees must be "essential to the proper

settlement of the estate". Sec. 20.2053-3(a), (c)(3), Estate Tax Regs. This Court and the U.S. Court of Appeals for the Eleventh Circuit (to which an appeal of this case would lie), have recognized the validity of section 20.2053-3, Estate Tax Regs., as imposing a Federal standard of necessity over and above the State requirement of allowability. See Marcus v. Dewitt, 704 F.2d 1227, 1229-1230 (11th Cir. 1983) (citing Pitner v. United States, 388 F.2d 651, 659 (5th Cir. 1967)); Estate of Lockett v. Commissioner, T.C. Memo. 1998-50.

We first consider whether reimbursement of the legal fees at issue was allowable under Florida law. In approving the 2007 settlement agreement, the Florida circuit court stated:

> Based upon more than 15 hearings held before the undersigned judge since 1999, the Court specifically finds that the professional services referred to in paragraphs 2.a.i., ii., and iii. of the Settlement Agreement, were and will be essential to the proper administration and settlement of the above Estate and Living Trust, and necessary to determine the beneficiaries, to carry out the intent of the above Decedent and to effect the proper distribution of said Estate and Living Trust * * *.

Paragraphs 2.a.i., ii., and iii. of the 2007 settlement agreement provided for reimbursement of legal fees incurred by the Gill children and Valerie Gill as an individual. In addition, Fla. Stat. Ann. sec. 733.106 (West 2010) allows legal costs and attorney's fees to be paid by an estate. Considering these facts, we find that reimbursement of the legal fees was allowable under Florida law.

We next consider whether the legal fees reimbursed by the estate were reasonable in amount. Respondent claims the estate has not shown the legal fees in this case were reasonable and has therefore not met the burden of proof. We disagree with respondent. We first consider the fact that the Florida circuit court allowed reimbursement of the legal fees by the estate. Because Fla. Stat. Ann. sec. 733.106(3) allows attorneys to be awarded reasonable attorney's fees only for services to an estate, and the legal fees comprised mostly attorney's fees, we find this is strong evidence of the reasonableness of the fees. In addition, the estate introduced into evidence voluminous records of legal fees incurred by the Gill children over the years in which litigation was ongoing. Considering these records as a whole, we see nothing unreasonable about those fees. We also consider the fact that the Gill children were reimbursed less than their actual legal fees. Respondent offered no evidence of his own that the legal fees were unreasonable. Considering the evidence, we find the legal fees reimbursed by the estate were reasonable.

Finally, we consider whether a deduction for the reimbursed legal fees is proper under section 20.2053-3(a) and (c)(3), Estate Tax Regs. Section 20.2053-3(c)(3), Estate Tax Regs., provides:

> Attorneys' fees incurred by beneficiaries incident to litigation as to their respective interests are not

deductible if the litigation is not essential to the proper settlement of the estate within the meaning of paragraph (a) of this section. An attorney's fee not meeting this test is not deductible as an administration expense under section 2053 and this section, even if it is approved by a probate court as an expense payable or reimbursable by the estate.

Section 20.2053-3(a), Estate Tax Regs., provides in part:

The amounts deductible from a decedent's gross estate as "administration expenses" * * * are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee, whether the trustee is the executor or some other person. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. * * *

Respondent argues that the legal fees at issue are not deductible because they were not paid for services "essential to the proper settlement of the estate". Instead, respondent claims the legal fees were incurred for the personal benefit of the Gill children and Valerie Gill. Respondent correctly notes that the decision of the Florida circuit court approving reimbursement of the legal fees by the estate is not determinative under section 20.2053-3(c)(3), Estate Tax Regs.

The estate argues that the legal fees are deductible because they were incurred in litigation essential to the proper settlement of the estate. The estate first argues that even if the litigation involved only who would take which assets, the

litigation was still necessary to determine the true testamentary intent of decedent. The estate also argues that both the Gill children and Valerie Gill owed certain fiduciary duties to decedent and his estate. The estate claims these fiduciary duties obligated the Gill children and Valerie Gill to defend what they each believed to be the testamentary intent of decedent.

We turn to caselaw to determine what litigation is essential to the proper settlement of the estate. In Estate of Reilly v. Commissioner, 76 T.C. 369 (1981), there was a dispute between the decedent's estate and the decedent's wife involving whether certain assets were owned by the estate or by the wife. We allowed the estate to deduct the wife's attorney's fees paid by the estate under section 20.2053-3, Estate Tax Regs., finding that the asset litigation was essential to the proper settlement of the estate because it determined the size of the estate. We stated that the litigation in that case involved "more than a dispute between 'beneficiaries' of a decedent in which the estate merely occupied the position of a stakeholder." Id. at 374.

In determining whether legal fees were for services "essential to the proper settlement of the estate", we have also found legal fees to be deductible when a party incurs legal fees while acting in respect of a fiduciary relationship between them and the estate. In Estate of Swayne v. Commissioner, 43 T.C. 190

(1964), two wills executed by the decedent were sought to be probated by different parties. The decedent's son, Noah, was nominated as executor under the later will, but not the earlier will. In addition, Noah was to receive a larger share of the estate as a beneficiary under the later will. Under Connecticut State law, Noah, as the nominated executor, was required to exhibit the later will for probate. Noah tried to have the later will probated, but was unsuccessful. We held the legal fees incurred by Noah were deductible, stating:

> the fact that his personal interest coincided with his duty as executor did not, ipso facto, render the legal fee in question a personal expense. There is no evidence any part of the fee was incurred by Noah in any capacity other than as executor. Furthermore, the litigation involving the will contest was essential to the settlement of the estate, for until it was determined which will should be probated, proper distribution of the estate could not be made.

Id. at 200.

In Estate of Whitt v. Commissioner, T.C. Memo. 1983-262, affd. 751 F.2d 1548 (11th Cir. 1985), criminal charges were brought against the coadministrators of one estate. One of the coadministrators was also the executor of a second estate. The coadministrators hired a lawyer to defend them against the charges and represent the estates. The estates each paid $5,000 of the $13,000 total attorney's fees, then sought deductions for those payments. The other $3,000 was allocated to one of the

coadministrators personally. In holding the deductions were allowable, we stated:

> We also are convinced that the payment of the instant attorney fees meets the requirements of respondent's regulations. The fees were incurred in connection with respondent's criminal investigation of both estates and to defend criminal charges brought against the executors of the Estate of Audry J. Whitt for failure to file the estate tax return. Clearly the charges were brought against Loyd and Willard Whitt in their capacities as co-administrators and executor, not as individuals. * * * This is not a case where legal fees were incurred by a beneficiary in litigation over his own interests where the Estate merely occupied the position of a stakeholder. * * * Rather, the fees incurred in connection with respondent's investigation and in defense of these criminal charges were "essential to the proper settlement of the estate."

In Estate of Dutcher v. Commissioner, 34 T.C. 918 (1960), the decedent and his wife had filed a complaint in Florida State court to partition certain mutual fund shares. The decedent's son and daughter, John and Mary Jane, were named defendants in the suit. John and Mary Jane filed an answer 8 days after the decedent's death, claiming that title to all the shares had vested in them at the decedent's death. John and Mary Jane also counterclaimed against the decedent's wife, alleging that she was in possession of certain other assets of the decedent's estate. Before the children answered, John had been appointed special administrator of the decedent's estate. The estate later sought to deduct expenditures for the partition suit and counterclaim. In denying this deduction, we stated:

>The litigation was started by decedent in his lifetime and after he died neither the special administrator not [sic] the executor of his estate were made parties. The suit was against John and Mary Jane and they answered and counterclaimed and thereafter pleaded as individuals. The record shows John had been appointed special administrator of his father's estate several days before he filed his original answer in the Florida suit. However, John, in his representative capacity, never did appear by himself or his attorney in the Florida litigation.

Id. at 924-925. It appears we would have allowed the deduction had John appeared in his fiduciary capacity. See id.

We will separately address the legal fees associated with the 1997 to 2000 litigation and mediation, the 2002 to 2007 litigation and mediation, and the present Tax Court case. For each segment of litigation, we will determine whether the reimbursed legal fees were incurred in activities essential to the proper settlement of decedent's estate.

The initial litigation and mediation from 1997 to 2000 was between the Gill children and the estate, with the Gill children suing in both their individual and fiduciary capacities (as successor cotrustees of decedent's Living Trust and nominated co-personal representatives of decedent's estate under a prior will of decedent). This litigation addressed the undue influence issue surrounding decedent's will. Because the Gill children acted in their fiduciary capacities and the litigation resolved the undue influence issue, we hold that the litigation and mediation from 1997 to 2000 involved "more than a dispute between

'beneficiaries' of a decedent in which the estate merely occupied the position of a stakeholder." See Estate of Reilly v. Commissioner, 76 T.C. at 374; Estate of Swayne v. Commissioner, supra at 200; Estate of Dutcher v. Commissioner, supra at 924-925; Estate of Whitt v. Commissioner, supra. The estate's reimbursement of the Gill children's legal fees incurred as a result of the 1997 to 2000 litigation and mediation is therefore deductible as an expenditure essential to the proper settlement of the estate. While it is true the Gill children personally gained as a result of their actions from 1997 to 2000, "The fact that some benefit results to the beneficiaries from an expenditure is not a reason to disallow the expense as a deduction". See Porter v. Commissioner, 49 T.C. 207, 225 (1967); see also Estate of Reilly v. Commissioner, supra at 373 (quoting Porter v. Commissioner, supra at 225).

A more difficult question relates to legal fees incurred as a result of the 2002 to 2007 litigation and mediation. During that time, Valerie Gill and SunTrust, in their capacities as the estate's co-personal representatives, initiated a lawsuit challenging the 2000 settlement agreement which was found to be frivolous and was dismissed with prejudice. They appealed that decision and lost again. Valerie Gill, in her individual capacity, then sued to challenge the 2000 settlement agreement only to lose on summary judgment. The Gill children defended

against these lawsuits and initiated their own lawsuits for purposes of enforcing the 2000 settlement agreement and preserving estate assets from the costs associated with the lawsuits Valerie Gill and SunTrust brought in their fiduciary capacities. At times the Gill children litigated solely in their individual capacities and at other times they litigated in both their individual and fiduciary capacities.

Eventually the parties entered mediation, which led to execution of the 2007 settlement agreement. That agreement provided that the estate would reimburse the Gill children's attorney's fees and litigation costs incurred up to execution of the 2007 settlement agreement, plus $20,000 prospectively for their attorney's fees associated with court approval of the 2007 settlement agreement and reformation of the terms of decedent's Living Trust. Valerie Gill was reimbursed $18,000 for her personal attorney's fees associated with court approval of the 2007 settlement agreement and reformation of decedent's Living Trust. For the reasons stated below, we hold that all legal fees reimbursed to the Gill children are deductible, while the legal fees reimbursed to Valerie Gill as an individual are not deductible.

The Gill children's involvement in the 2002 to 2007 litigation was an extension of their involvement in the 1997 to 2000 litigation. Upon Valerie Gill's attack on the validity of

the 2000 settlement agreement, the Gill children were forced to defend and seek to enforce that agreement. The Gill children also sought to protect the estate from improper expenditures by Valerie Gill and SunTrust, who were initiating petty and frivolous lawsuits as the estate's personal representatives and charging attorney's fees to the estate. When it became clear that an additional round of mediation would be the best option for all parties, including the estate, the Gill children agreed to enter mediation again.

The Gill children's reimbursed legal fees are a deductible expense to the estate because the Gill children's involvement in the litigation, mediation, and reformation of the terms of decedent's Living Trust from 2002 to 2007 was necessary to enforce the result of the 1997 to 2000 litigation and mediation. Valerie Gill's actions forced the Gill children to defend and seek to enforce the 2000 settlement agreement, which was the result of the 1997 to 2000 litigation and mediation. Although the Gill children both defended against and initiated civil lawsuits and participated in mediation, all their actions taken from 2002 to 2007 were reactionary and necessary to defend and enforce as much of the 2000 settlement agreement as they could. Importantly, the Gill children did not seek estate assets in excess of what they would have received under the 2000 settlement agreement. We also note that the Gill children did not initiate

frivolous lawsuits and did not seek to unnecessarily prolong litigation.

Because the 1997 to 2000 litigation was essential to the proper settlement of decedent's estate and the Gill children were seeking only to enforce the outcome of that litigation from 2002 to 2007, we hold that the estate's reimbursement of the Gill children's legal fees incurred in connection with the 2002 to 2007 litigation is deductible as an expense essential to the proper settlement of the estate.

On the other hand, reimbursement of Valerie Gill's individual legal fees associated with court approval of the 2007 settlement agreement and reformation of the terms of decedent's Living Trust is not a deductible expense to the estate because: (1) Valerie Gill's individual involvement in the litigation, mediation, and reformation of the terms of decedent's Living Trust from 2002 to 2007 was not an attempt to enforce the result of the 1997 to 2000 litigation and mediation, and (2) her individual involvement from 2002 to 2007 was not otherwise essential to the proper settlement of the estate. Valerie Gill was not seeking to enforce the result of the 1997 to 2000 litigation and mediation as the Gill children were. Indeed, Valerie Gill was the party who failed to comply with the 2000 settlement agreement and initiated lawsuits to have it declared void. To this end she filed lawsuits which were combative and

frivolous; it seems these lawsuits had no purpose other than to extend litigation and force the Gill children into another round of mediation. In addition, Valerie Gill sought estate assets in excess of those she would have received under the 2000 settlement agreement.

Valerie Gill's individual actions did not challenge the validity of decedent's will or fulfill a fiduciary duty she owed to the estate. Unlike the Gill children, Valerie Gill was not seeking to enforce the 2000 settlement agreement. All her individual actions were only attempts to obtain assets which had been assigned to the Gill children in the 2000 settlement agreement. We find Valerie Gill's individual legal fees associated with court approval of the 2007 settlement agreement and reformation of the terms of decedent's Living Trust were incurred for her individual benefit rather than for the benefit of the estate and were therefore not essential to the proper settlement of the estate. See sec. 20.2053-3, Estate Tax Regs.

The estate argues that even if Valerie Gill's individual actions taken from 2002 to 2007 relate only to how much she personally takes from the estate, those actions are still essential to the proper settlement of the estate because they helped to determine the proper testamentary intent of decedent. We reject this argument as inconsistent with section 20.2053-3, Estate Tax Regs., and the standard that a case involve "more than

a dispute between 'beneficiaries' of a decedent in which the estate merely [occupies] the position of a stakeholder." Estate of Reilly v. Commissioner, 76 T.C. at 374. We hold the estate may not deduct reimbursements for Valerie Gill's individual legal fees associated with court approval of the 2007 settlement agreement and reformation of the terms of decedent's Living Trust.

Because respondent has already allowed legal fee deductions for actions taken by SunTrust and Valerie Gill, purportedly in their capacities as the estate's representatives, from 2002 to 2007, we need not address whether deductions for those legal fees are allowable.

With respect to legal fees prospectively reimbursed in the 2007 settlement agreement to the Gill children and Valerie Gill for concluding this Tax Court litigation, we find those fees are not deductible. The estate has not explained why, and we do not believe, involvement by attorneys for the Gill children and Valerie Gill as an individual in the instant litigation was essential to the proper settlement of the estate. We therefore hold reimbursements for those legal fees are not deductible by the estate.

B. Accounting Fees

The estate seeks to deduct $17,112.25 in accounting fees paid by SunTrust, as co-personal representative of the estate, to

accountants for services rendered to the estate in 1999, 2000, and 2008.  Respondent disputes $8,826 of the $17,112.25 because two payments made to Kerkering Barberio & Co. (Kerkering Barberio) for professional services provided to decedent's Marital Trust in 1999 and 2000 were listed as distributions to/for a beneficiary rather than as administration expenses. Other payments made to Kerkering Barberio were listed as administration expenses.

It is not apparent why these two payments to Kerkering Barberio were listed as distributions to/for a beneficiary rather than administration expenses.  Neither the estate nor respondent has elaborated on the reasoning behind such an accounting. Because the estate has not explained the accounting, we hold the estate has not satisfied the burden of proof and may not deduct those amounts.

C.  Trustee and Management Fees

The estate also seeks to deduct $12,873.23 in additional trustee and management fees paid to SunTrust from 1999 to 2008. The estate seeks to deduct $12,034.81, $6,069, $1,884, $390, $391.46, $4,322.84, $5,301.54, and $1,082.13 for years 1999, 2000, 2001, 2002, 2003, 2005, 2006, and 2007, respectively.  The sum of these deductions is offset by a reduction taken in the 2004 deduction of $18,602.55.  Respondent disputes deductions of $2,432.63, $6,069, $1,884, $390, $391.46, $4,322.84, $1,252.57,

and $1,082.13 for years 1999, 2000, 2001, 2002, 2003, 2005,[4] 2006, and 2007, respectively, for the reasons that the estate overstated some payments and some fees are not sufficiently explained.

For 1999 respondent claims the estate overstated trustee and management fees by $2,432.63. A payment of $2,432.63 is listed as a distribution to/for a beneficiary in the statement of account. The payment description is "TRANSFER PRINCIPAL CASH TO ACCOUNT 58-01-214-5801758 GILL, R.J. FBO ALABASTER CO-TA TO CORRECT 10/19/99 PAYMENT FROM INCORRECT ACCT RE: MATTER 10135". The accounting was not explained by either the estate or respondent, and we therefore hold the estate has not met the burden of proof and may not deduct this $2,432.63.

For 2000 respondent claims the estate overstated trustee and management fees by $6,069. This overstatement is due to amounts listed in the statement of account as fees for real estate services paid to the fiduciary and to taxes paid to the State of Florida on behalf of the fiduciary. We hold these payments are

---

[4]There is a discrepancy in the estate's opening brief and respondent's reply brief with respect to the amount of trustee and management fees the estate already deducted on Form 1041, U.S. Income Tax Return for Estates and Trusts, for 2005. Respondent states the estate already deducted $40,969.57, while the estate states only $39,076 was already deducted. Because Forms 1041 for the estate were not submitted and the numbers were not stipulated, there is no way to tell which party is correct. The parties must resolve this discrepancy in their Rule 155 calculations.

deductible.  See sec. 20.2053-3(d)(1), Estate Tax Regs.
("Expenses necessarily incurred in preserving and distributing
the estate * * *, including the cost of storing or maintaining
property of the estate, if it is impossible to effect immediate
distribution to the beneficiaries" are deductible).

For 2001 respondent claims the estate overstated trustee and
management fees by $1,884.  This overstatement is due to amounts
listed in the statement of account as fees for real estate
services paid to the fiduciary and to taxes paid to the Internal
Revenue Service on behalf of the fiduciary.  We hold these
payments are deductible.  Id.

For 2002 respondent claims the estate overstated trustee
and management fees by $390.  The $390 overstatement is due to
amounts listed in the statement of account as payments made to an
account of Raymond Gill "to correct [a] legal bill payment".  The
payments were listed as distributions to/for a beneficiary.  The
accounting was not explained by either the estate or respondent,
and we therefore hold the estate has not met the burden of proof
and may not deduct the $390.

For 2003 respondent claims the estate overstated trustee and
management fees by $391.46.  It is unclear what payment(s) listed
on the statement of account the overstatement is attributable to.
Part of the overstatement appears to be for unexplained base and

management fees paid for an IRA.  We hold the estate has not met the burden of proof and may not deduct the $391.46.

For 2005 respondent claims the estate overstated trustee and management fees by $4,322.84.  It is unclear what payment(s) listed on the statement of account the overstatement is attributable to.  Part of the overstatement appears to be for unexplained base and management fees paid for an IRA.  We hold the estate has not met the burden of proof and may not deduct the $4,322.84.

For 2006 respondent claims the estate overstated trustee and management fees by $1,252.57.  The $1,252.57 overstatement is attributable to various payments made for property insurance liability, property inspections, and property appraisals for real property owned by the trust.  We hold those payments are deductible.  See sec. 20.2053-3(d)(1) and (2), Estate Tax Regs. (expenses necessary for preserving or selling property of the estate are deductible).

For 2007 respondent claims the estate overstated trustee and management fees by $1,082.13.  The $1,082.13 overstatement is attributable to various electric and association fees paid as a result of the trust's ownership of a condo in New York City.  We hold those payments are deductible.  See sec. 20.2053-3(d)(1), Estate Tax Regs. (expenses necessary for preserving property of the estate are deductible).

D.  Distributions to Grandchildren's Trusts

The estate also seeks to deduct $25,000 paid to the grandchildren's trusts from the estate pursuant to the 2007 settlement agreement as an administrative expense.  The two $12,500 payments were made as reimbursements for attorney's fees incurred by the trusts during the course of the will contest litigation and to compensate the trusts for loss of income due to mismanagement of funds by the cotrustees, Valerie Gill and SunTrust.  The estate contends those payments are deductible administrative expenses under section 20.2053-3, Estate Tax Regs. Respondent claims the distributions are not deductible administration expenses.

We disagree with the estate with respect to the reimbursed attorney's fees portion of the payments.  Section 20.2053-3(c), Estate Tax Regs., requires that "the amount [of the attorney's fees] claimed * * * [as a deduction may] not exceed a reasonable remuneration for the services rendered".  The estate made no argument and offered no evidence to establish that the attorney's fees were reasonable.  The amounts of these attorney's fees were never mentioned in either the 2007 settlement agreement or other evidence; in fact, the 2007 settlement agreement does not even mention that the $12,500 distributions included reimbursement for attorney's fees.  It appears even the Florida circuit court which approved the 2007 settlement agreement was unaware that such

attorney's fees existed; the circuit court did not specifically find these fees were "essential to the proper administration and settlement" of the estate, as it did the attorney's fees reimbursed to the Gill children and Valerie Gill. We hold the estate has not met the burden of proving the reasonableness of the fees and therefore may not deduct the reimbursed attorney's fees.

We also disagree with the estate with regard to the portion of the payments the estate paid to the trusts for loss of income due to mismanagement of trust funds by Valerie Gill and SunTrust while they were acting as cotrustees of the grandchildren's trusts. Such compensation was not necessary to the proper settlement of the estate because it did not arise from a claim the grandchildren's trusts had against the estate. See Estate of Reilly v. Commissioner, 76 T.C. at 377-378. Rather, the proper claim would have been against Valerie Gill and SunTrust for breach of fiduciary duties and mismanagement of funds. We therefore hold the portion of the $25,000 representing mismanagement compensation is not deductible.

III. Whether the Amount of the Marital Deduction Should Be Reduced by Estate Taxes Paid of $47,752.54

Section 2056(a) provides for the allowance of a marital deduction to "be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his

surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." Decedent's Marital Trust was set up in such a way that all assets passing to it from the estate or decedent's Living Trust would increase the marital deduction, as if the assets had so passed to the surviving spouse (Valerie Gill) herself. The parties agree that the estate is entitled to a marital deduction under section 2056(a) with respect to decedent's Marital Trust; however, they do not agree on the size of the marital deduction. Respondent contends that under section 2056(b)(4), the amount of the marital deduction should be reduced by a portion of the $95,787.82 in Federal estate taxes and State death taxes reimbursed to the estate pursuant to the Joan Gill trust settlement. The estate argues the reimbursement should not reduce the marital deduction.

Pursuant to the Joan Gill trust settlement, $95,787.82 representing Federal estate taxes and State death taxes previously paid by the estate was reimbursed to the estate. This $95,787.82 in Federal estate taxes and State death taxes was generated by the $360,931.79 which should have been paid to Joan Gill's Marital Trust by decedent and by an additional $358,807.26 which was distributed to the Gill children, grandchildren, and grandchildren's trusts from the estate.

Section 2056(b)(4) provides:

In determining for purposes of subsection (a) the value
of any interest in property passing to the surviving

spouse for which a deduction is allowed by this section--

    (A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and

    (B) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.

Joan Gill's Living Trust instrument provided that all Federal estate taxes and State death taxes attributable to the inclusion of property of Joan Gill's Marital Trust in the gross estate of decedent were to be paid from the assets of Joan Gill's Marital Trust. Respondent concedes the portion of the $95,787.82 in estate taxes attributable to the $360,931.79 which should have been paid to Joan Gill's Marital Trust by decedent should not reduce the marital deduction, as the estate tax obligation on that amount fell on Joan Gill's Marital Trust (rather than on the estate). As the $95,787.82 in estate taxes was generated by the $360,931.79 which should have been paid to Joan Gill's Marital Trust by decedent plus an additional $358,807.26 which was distributed to the Gill children, grandchildren, and grandchildren's trusts, the portion which respondent concedes is

[$360,931.79 / ($360,931.79 + $358,807.26)] x $95,787.82, or $48,035.28.

However, respondent argues the $47,752.54 balance of the $95,787.82 should reduce the marital deduction since it was attributable to $358,807.26 which was distributed to the Gill children, grandchildren, and grandchildren's trusts from the estate and decedent's Living Trust. The $358,807.26 comprises: (1) $20,527 in tangible personal property devised to Valerie Gill in decedent's will but passing to the Gill children upon her disclaimer; (2) $138,280.26 in IRAs payable to the grandchildren; and (3) $200,000 paid to the grandchildren's trusts pursuant to the terms of decedent's Living Trust.

Respondent claims that unlike the $360,931.79, Joan Gill's Marital Trust had no obligation to pay the Federal estate and State death taxes on the $358,807.26 in distributions. Instead, respondent claims that the estate and decedent's Living Trust were obligated to pay those taxes. As a result, respondent argues the tax obligation ultimately fell on decedent's Marital Trust (as residuary beneficiary of the estate and recipient of the property of decedent's Living Trust). If respondent is correct that the tax obligation ultimately fell on decedent's Marital Trust, a $47,752.54 reduction in assets passing to decedent's Marital Trust (with respect to which the estate is entitled to the marital deduction) results, and a corresponding

reduction in the marital deduction is required by section 2056(b)(4).

The estate argues that the Federal estate and State death taxes were generated by assets passing from the estate and decedent's Living Trust to the Gill children, grandchildren, and the grandchildren's trusts. The estate claims that as a result, the tax obligation "should have" fallen on those parties as recipients of the property generating the taxes. The estate notes that, in fact, the tax burden ultimately did fall on the Gill children because pursuant to the Joan Gill trust settlement they reimbursed the estate for previously paying those taxes. As a result, the estate claims that none of the tax burden fell on assets passing to decedent's Marital Trust, and the marital deduction amount should not be reduced under section 2056(b)(4).

We agree with the estate. Absent a controlling Federal statute, State law determines who will bear the burden of the Federal estate tax. Riggs v. Del Drago, 317 U.S. 95 (1942); Estate of Leach v. Commissioner, 82 T.C. 952, 962 (1984), affd. without published opinion 782 F.2d 179 (11th Cir. 1986). The Code provides no general rules for the apportionment of estate taxes. Estate of Fine v. Commissioner, 90 T.C. 1068, 1072 (1988), affd. without published opinion 885 F.2d 879 (11th Cir. 1989). State law also determines who will bear the burden of State death taxes. Under Florida law effective at the time of

decedent's death, taxes attributable to amounts passing under a will or trust instrument were to be charged to and paid from the residuary estate or from the corpus of the residuary share of the trust unless the governing will or trust instrument directed otherwise.  Fla. Stat. Ann. sec. 733.817(1).

We turn to decedent's will and trust instruments to determine whether they directed which property estate and death taxes were to fall on.  Decedent's will states:

> estate taxes assessed by reason of my death, shall be * * * paid by the Trustee of my Trust as directed in my Trust, except that <u>the amount, if any, by which the estate taxes shall be increased as a result of the inclusion of</u> property transferred by me by gift prior to my death or property in which I may have a qualifying income interest for life * * * or <u>property over which I may have a power of appointment or control shall be paid by the person holding or receiving such property</u> * * *.  [Emphasis added.]

Decedent's Living Trust agreement similarly directs that estate taxes assessed by reason of decedent's death be paid out of the trust principal, but that increases in estate taxes from inclusion of property transferred as a gift before decedent's death, property in which decedent has an income interest, or property over which decedent has "a power of appointment or control" shall be paid by the person holding or receiving that property.  Because the parties have not argued the effect of the will and trust instrument terms regarding who is obligated to pay the contested taxes, we are left with our own interpretation of the somewhat confusing terms quoted above.

No evidence was presented that the assets at issue were transferred by decedent as a gift before his death or that decedent held any qualifying income interest in such assets. However, we believe the emphasized "appointment or control" language quoted above places the Federal estate and State death tax burden on the recipients of the $358,807.26. The Gill children, grandchildren, and grandchildren's trusts received the $358,807.26[5] which decedent had controlled as a result of decedent's failure to pay that amount to Joan Gill's Marital Trust. Our interpretation of the quoted terms is reinforced by the fact that the Gill children (rather than the estate or decedent's Living Trust) ultimately paid the taxes by reimbursing a portion of the Joan Gill trust settlement amount.

Under Florida law, the Federal estate and State death tax burden falls on the party specified in the will and trust instruments. We find these instruments placed the tax burden on the recipient of distributed property rather than on the estate and decedent's Living Trust. Because the estate or decedent's Living Trust were not obligated to pay these Federal estate and State death taxes, the obligation did not ultimately fall on decedent's Marital Trust. We therefore hold there is no reduction in the marital deduction under section 2056(b)(4).

---

[5]This amount was paid to the Gill children, grandchildren, and grandchildren's trusts as a result of the Joan Gill trust settlement.

IV.  Conclusion

We find the estate is entitled to deductions for certain additional administration expenses as described above.  We further find the amount of the marital deduction should not be reduced by Federal estate taxes and State death taxes paid of $47,752.54.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.